## LEONARD v. FIELD.
### No. 7285.

Circuit Court of Appeals, Ninth Circuit.

May 28, 1934.

Douglas T. Ballinger, of Seattle, Wash., for appellant.

Raymond G. Wright and Gail M. Williams, both of Seattle, Wash., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order of the District Court made and entered September 12, 1933, affirming an order of the referee in bankruptcy made on May 10, 1932, disallowing a petition for reclamation filed by A. W. Leonard. According to the allegations of the various claims and petitions for reclamation filed by the petitioner he intrusted certain stocks of the aggregate value of $28,464.50 to the bankrupt as security for margins upon stock to be purchased by the bankrupt for and on behalf of the appellant.

On June 22, 1931, appellant filed claim for $31,500 for the conversion of the securities deposited by him as collateral which it was alleged were sold without authority. The next day the claim was withdrawn, claimant averring "that since said claim was turned over to be filed claimant has learned additional facts which make it unwise for him to prove his claim as a general creditor." On October 27, 1931 a claim was filed for $28,464.50, together with interest from June 25, 1930, at 6 per cent. per annum for the conversion of the aforementioned stock including 20 shares of the Pacific National Bank of Seattle, valued at $5,400, and 200 shares of Stone and Webster stock valued at $11,512.50. This claim was filed by James Crehan of Seattle, assignee petitioner. In the meantime, on March 10, 1932, the referee in bankruptcy made an order that all claims "to any of the stocks, bonds, securities, cash or assets of any kind or the proceeds thereof now in the possession of the trustee in bankruptcy be filed on or before April 15, 1932, or be forever barred." Personal notice thereof was to be given to all known claimants and also published for two weeks in the Daily Journal of Commerce. Thereafter, on April 14, 1932, petitioner filed a claim for the proceeds of the sale of 20 shares of stock of the Pacific National Bank of Seattle, being the 20 shares of Pacific National Bank stock mentioned in the claim theretofore filed for $28,464.50. This petition was granted in part for the sum of $2,842.65 on May 17, 1932. On April 30th, after the date fixed for filing claims in reclamation, petitioner filed a petition for reclamation for the proceeds of the sale of 100 shares of Stone and Webster common stock.

484

Flora Muffley joined in this petition making a similar claim for the proceeds of 50 shares of the Puget Sound Power & Light Company stock. It was alleged in this claim by the claimants that these shares of stock were given to the bankrupt as collateral security for the purchase of stocks listed on the New York Exchange, but as a matter of fact no such stocks were purchased and that the stocks pledged by the claimants were hypothecated by him without right or authority for a loan of $8,500, that the pledge holder had sold the property for $12,048.68, and that the balance of $3,645 had been paid to the trustee in bankruptcy as a part of the fund turned over by the equity receiver for the bankrupt who had been appointed in an equitable action before bankruptcy. In this joint claim there was no segregation of the amount claimed by the two claimants. Supplementary to this claim a verified petition for a hearing was filed on May 10, 1932. This petition alleged the making of the claim of October 27, 1931, for $28,-464.50, and alleged:

"That said claim set up, with particularity, the delivery of certain collateral stocks to Paul E. Williams Co. as security for the purchase of shares through bankrupt as broker; that as a matter of fact, no shares were so purchased by bankrupt for petitioner and that no indebtedness then, or at any time during the court [sic] of his account with bankrupt, existed between them; that said claim further stated that no securities were returned to said A. W. Leonard, but that the same were sold or pledged and the time and manner in which such disposition was made was unknown to petitioner; petitioner states that the books of Paul E. Williams Co. were kept in San Francisco, and creditors of said concern were unable to ascertain the facts or circumstances in connection with the purchase or sale of securities for their accounts or the circumstances surrounding the disposal of their collateral; that said books were not brought to Seattle until the fall of 1931, and that the proceeds of the sale of 100 shares of Stone & Webster stock, being certificate No. N-10076, registered in petitioner's name, although paid to the Trustee in Bankruptcy, was not at that time traceable as such proceeds.

"Petitioner further states that, on or about March 10, 1932, the above-entitled court sent to all customers of the bankrupt a notice, copy of which is attached hereto and marked 'Exhibit B', and, although petitioner received copy of the same, he was without knowledge or information concerning the company's affairs and had no information concerning the survival of securities belonging to himself or any proceeds thereof; that, on or about April 30, 1932, he discovered that proceeds of the sale of said certificate of Stone & Webster stock had been paid by the Peoples Investment Company, who had unlawfully pledged the same, to C. K. Poe, who held said funds as trustee for the bankrupt and who later turned same over intact to the trustee herein.

"Petitioner believes that neither the trustee nor his attorneys were informed that proceeds of sale of petitioner's securities were in their possession and that the petitioner himself was not informed that they were available for reclamation until the time for appearance under the notice referred to herein as 'Exhibit B' had expired. [April 15, 1932]

"Petitioner further states that, on or about April 14, 1932, he made and filed an amended petition for the reclamation of the proceeds of sale of collateral security; [Pacific National Bank stock] that said amended petition is on file in this court and is referred to and made a part hereof by reference; that said amended petition prayed for general relief as follows: 'and for such other and further relief as to the court may seem just.'

"The basis of petitioner's claim for the proceeds of this stock is as follows:

"First: That he delivered said certificate as security against purchases of stock to be made for his account by the bankrupt. He alleges that no purchases were made, although purported transactions were charged to his account which were without foundation in fact.

"Second: That his collateral, consisting of the aforementioned 100 shares of Stone & Webster stock, was immediately hypothecated by the bankrupt.

"Third: That, on or about March 31, 1931, said certificate, still registered in petitioner's name and identifiable as his own, was delivered to the Peoples Investment Company, a holding corporation for Paul E. Williams Co. of Washington, and others.

"Fourth: That said Peoples Investment Company pledged said certificate, with others, as collateral on a loan made to them by the American Exchange Bank of Seattle; that, on or about April 13, 1931, said collateral, including petitioner's, was sold by the bank and the proceeds applied to the payment of the loan against them; that the full sale price of said securities was $12,048.68; after deduction of the loan of $8,500, there remained $3,548.68, which said sum is identifiable as

proceeds of said 100 shares of Stone & Webster stock sold for $4,925, subject to the right of other holders of collateral in said pledge to demand contribution; that said excess, plus unearned interest totaling $3,675 was by the Peoples Investment Company delivered to C. K. Poe, acting as Trustee for Paul E. Williams Co., and by him delivered to the Receiver and the Trustee in Bankruptcy of the above estate; that petitioner can trace the proceeds of his stock, as outlined above, with particularity.

"Amendment: Petitioner further states that, if his Amended Petition for Reclamation heretofore filed on April 14, 1932, [for 20 shares Pacific National Bank stock], is not sufficiently broad to accomplish reclamation of the proceeds resulting from the sale of his said certificate of 100 shares of Stone & Webster stock, he be permitted to amend the same by asking for the surrender of the proceeds of such sale under allegations similar to those heretofore indicated in this petition. His proposed Amended Claim for Reclamation is attached hereto and marked 'Exhibit C.'

"Petitioner further believes that his claim, as well as those of other creditors of the above-entitled estate, is in the process of liquidation by litigation, within the meaning of the Act of July 1, 1898, ch. 541, Sec. 57, 30 Stat. 560; February 5, 1903, ch. 487, Sec. 12, 32 Stat. 799; U. S. Code, Title 11, Sec. 93, sub-sec. 17; and therefore susceptible of amendment.

"Wherefore, petitioner prays that a hearing be granted upon this petition and that he be permitted to introduce proof as to the allegations herein and that, in the event the court refuse the same, he be permitted to so amend his Amended Petition for Reclamation asking for the reclamation of the additional funds mentioned in this petition; and, in the event both are denied, that the time for filing a further petition in reclamation be extended to and including May 2, 1932; that the court consider and hear evidence on petitioner's proof of claim as filed herein, treating the same as a petition in reclamation; and for such other and further relief as to the court may seem just."

■ The proposed amended claim attached to the petition for hearing is segregated from the above-mentioned claim theretofore filed on April 30, 1932, by Flora Muffley and A. W. Leonard jointly claiming the total sum of $3,-675, and is by the appellant A. W. Leonard alone for $3,675, proceeds of said 100 shares of Stone and Webster stock, "less whatever portion of said sum is due other claimants of securities or funds in said pledge." The referee denied the last-mentioned petition of A. W. Leonard filed May 10, 1932, and also denied the joint petition of A. W. Leonard and Flora Muffley filed April 30, 1932. Appellant Leonard alone petitioned for review claiming that the original claim filed on his behalf on October 27, 1931, for $28,464.50 was sufficient as a petition in reclamation for the portion of the sum of $3,675 derived from the sale of the 100 shares of Stone and Webster common stock mentioned in the claim for conversion of all his stock.

Second, that the above petition in reclamation filed by him on April 14, 1932, for the recovery of the proceeds of the 20 shares of Pacific National Bank stock was sufficiently broad to permit the court to consider and allow an additional claim for the recovery of the amount derived from the sale of the 100 shares of Stone and Webster stock. Neither of these positions can be maintained and they are properly denied by the District Court. The claim for recovery of the value of stock converted was essentially different from the claim for the proceeds of the stock. The claim of October 27, 1931, was based in part upon the conversion of the 100 shares of Stone and Webster stock and assumed as a basis for the claim of conversion that the title of the stock was vested in the bankrupt by reason of the conversion and that therefore the claimant was entitled to its value, while the claim for refund of the proceeds of the stock is based upon the theory that the stock and its proceeds still belonged to the claimant and had not vested in the bankrupt.

■ With reference to the petition of April 14, 1932, the claim was for the proceeds of the sale of 20 shares of Pacific National Bank stock and could not be extended by implication or by amendment to recover the proceeds of the 100 shares Stone and Webster stock.

■ The third point upon which appellant relied in his petition to review was that the joint petition of himself and Flora Muffley filed April 30, 1932, after the time fixed by the referee for the presentation of such claim "is sufficiently an equitable demand to require a hearing."

The fourth point is that the so-called "petition for hearing on preferred claim as a reclamation and alternative motion to amend filed May 6, 1932 sufficiently excuses previous failure to claim proceeds of claimant's stock and constitutes sufficiently equitable grounds for hearing the second amended claim filed

the same date [May 6, 1932] to require the referee to proceed to a hearing of the evidence."

The fifth claim is that the "claimant's petitions are of equitable cognizance and the court has power to suspend the rules and amend claimant's claims under the facts sworn to by him."

Sixth, that the "proceeds of the claimant's stock are his own property and are in no sense belonging to the estate of the bankrupt or trustee thereof."

These claims of error, 3, 4, 5, and 6 all assigned in petition for review are all predicated upon the proposition that although the petitions for reclamation were filed after the expiration of time fixed by the referee, the referee and the court should have permitted the filing of the claim and allowed the same. The reference to the claims filed October 27, 1931, April 14, 1932, and April 30, 1932, are all advanced for the purpose of showing the diligence of the claimant.

The appellee concedes that the right to allow an amendment to a claim already filed and the right to permit the filing of a claim in reclamation after the period fixed by the order is discretionary with the trial court, but contends that in order to invoke that discretion the applicant must show why he did not file the application earlier and cites in that regard In re T. A. McIntyre & Co. (C. C. A.) 176 F. 552. See, also, In re Zimmermann (C. C. A.) 66 F.(2d) 397. In determining whether or not the trial court abused its discretion in refusing to allow the filing of the claim after the date fixed by the referee as a limitation upon the filing of such claims, it should be remembered that as early as June 22, 1931, the appellant filed a claim for the conversion of the 100 shares of Stone and Webster stock, the proceeds of which he now seeks to recover by his claim in reclamation; that the next day he withdrew the claim stating that he learned facts "which make it unwise for him to prove his claim as a general creditor"; that on October 27, 1931, he again filed his same claim based upon the conversion of 200 shares of Stone and Webster stock, and other property; that in his allegation to excuse the delay in presentation of his claim he alleges that the books of the bankrupt were not brought to Seattle until the fall of 1931; that he alleges that on April 30, 1932, he discovered that the proceeds of the sale of the Stone and Webster stock certificate for 100 shares had reached the hands of the trustee, but he does not explain why he did not ascertain that fact earlier or show that he had exercised any diligence whatever in the examination of the books which had been available for more than a year. Under these circumstances we cannot say there is any abuse of discretion on the part of the referee or the court in declining to allow the claimant to set up his claim for the first time after the period for so doing fixed by the referee had expired.

■ The next question to be considered is whether or not he should have been allowed to amend his claims or petitions filed before the 15th of April, 1932.

As we have already pointed out, the petition for reclamation of the proceeds of the 20 shares of stock in the Pacific National Bank was filed on April 14, 1932, the day before the time expired for such presentation. It is true that incidentally to that claim the petitioner disclosed that among the stocks deposited by the claimant with the bankrupt were 100 shares of Stone and Webster stock, but this statement is purely incidental to the claim for the proceeds of the 20 shares of Pacific National Bank stock. To permit the amendment of this claim in reclamation to cover the other items of stock therein mentioned for the conversion of which a general claim has already been presented would be in effect to permit the filing of a new claim after the period therefor had expired. We have recently had occasion to consider the right to amend the claim against a bankrupt estate in Re Hotel St. James (C. C. A.) 65 F.(2d) 82. We there approved the rule announced in Re Thompson (C. C. A.) 227 F. 981, 983, where it was said: "Whether formal or informal, a claim must show (as the word itself implies) that a demand is made against the estate, and must show the creditor's intention to hold the estate liable." If, as we hold, the trial court had discretion to allow the filing of a claim in reclamation after the period fixed therefor by the referee, it does not matter whether the claim in reclamation proposed to be filed is a new claim or an amended claim in reclamation. In either event the matter would be within the discretion of the trial court. The only difference would be that in case of a filing of an imperfect claim the application to file an amendment would appeal more strongly to the sound discretion of the court than the attempt to file an entirely new claim after the period fixed. Here the appellant filed a claim as early as June, 1931, and a similar claim in October, 1931, against the bankrupt for the conversion of the stock whose proceeds he now seeks to reclaim. The only reason for the changed form of the claim is to take advantage of the information which he

has acquired to the effect that the moneys which came into the hands of the trustee at the inception of the bankruptcy proceeding were in part derived from the proceeds of appellant's stock misappropriated by the bankrupt and traceable to the fund in question.

In invoking the discretionary power of the court to permit filing of the new claim, or amended claim, it is essential for the appellant to show why he had not acquired the information upon which the claim for reclamation is based earlier and to show the exercise of diligence to ascertain the fact, in view of his knowledge that the stock had been misappropriated by the bankrupt and his knowledge that if he could trace the proceeds of the stock into the hands of the trustee, he would be to that extent preferred in the distribution of the assets of the bankrupt. This he failed to do.

■ In the consideration of the question as to whether or not the referee and the District Court exercised a sound discretion in denying appellant's application and claim, the appellee has incorporated in his brief a statement of many facts not shown by the record, and the appellant has assumed as true the allegations of its various claims filed before the referee. It seems unnecessary to say that we are controlled in our decision by the facts shown by the record and that statements of other and additional facts contained in the brief of either party cannot properly be considered. In this connection the appellee states that the total claims against the estate aggregate $580,000, that the statutory period for filing claims expired November 18, 1931, that a thousand creditors had filed claims against the estate, that the greater number of them have asserted the illegality of the transactions by the bankrupt; that the officers of the bankrupt corporation had been prosecuted and convicted of mail fraud and sentenced to imprisonment; that approximately 160 petitions in reclamation had been filed; he stated that the appellant had had several different attorneys; that an auditor was obtained by the trustee as early as September 28, 1931, and remained in his office daily from 9 to 5, each day during the whole period that the Department of Justice had had two to four government accountants examining the accounts of the bankrupt; and all this information was available to the appellant from September, 1931 to April 15, 1932. These statements should not have been made in the appellee's brief as they are not incorporated in the record. On the other hand, the duty is upon the appellant to show by the record presented that there has been an abuse of discretion in denying his application for leave to file his belated claim or to amend those theretofore filed. It is not necessary that we should assume that the facts stated by the appellant in his claims are true. These facts are evidently conclusions arrived at by the appellant from an examination of the records available to the referee and to the parties. If they were evident, they should have been sooner acted upon; if not, the referee and the court may have believed that the petitioner was in error in his conclusions. In either event there was no abuse of discretion in disallowing the petition.

Order affirmed.