**DICKEY et al. v. TODD et al.**

**No. 9564.**

Circuit Court of Appeals, Fifth Circuit.

Jan. 9, 1941.

Rehearing Denied Feb. 11, 1941.

Arthur H. Bartelt, of Austin, Tex., for appellants.

Stanley Boykin, Julian Edwin Simon, and H. S. Lattimore, all of Fort Worth, Tex., for appellees.

Before FOSTER and SIBLEY, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

During the early part of 1931, Harry W. Elliott, having brought together a group of oil leases in the East Texas field, sold undivided interests therein of 1/26,000th at $10 each. They were known as "Harry W. Elliott 12 Way Syndicate" interests. For copy of assignment, see footnote.*

In July, August, September and December of the same year, he put on a second sale also covering the leases in Harry W. Elliott 12 Way Syndicate, and several others described in new assignments of substantially the same tenor. In this lat-

ter instance, the interests were divided into 150,000 or 1/150,000th each, which were also sold at the rate of $10 apiece. However, the holders of the 12 Way Syndicate interests were given the right to exchange one of the first for three in the second syndicate. Most of such holders availed themselves of this right. This latter syndicate was known as "Harry W. Elliott Interest Assignments". The proceeds of the sales or interests in both syndicates were used for paying for leases and drilling wells.

In 1932, an involuntary petition in bankruptcy was filed against Elliott in Fort Worth, Texas. He filed an answer denying insolvency, but the issue was never decided.

In 1933, Elliott filed a voluntary proceeding under Section 74 of the amendment to the Bankruptcy Law of 1933, 11 U.S. C.A. § 202. His offer of composition or

---

* Footnote.

"State of Texas

"County of Tarrant.

"Whereas, certain oil and gas leases and royalties have been acquired and contracted for by Harry W. Elliott of Fort Worth, Tarrant County, Texas, said leases and royalties being located in various counties of Texas, to-wit:

"Milam County, Kimball County, Dawson County, Nacogdoches County, Rusk County, Cherokee County, and Gregg County.

"Whereas, the said oil and gas leases and royalties are now held by Harry W. Elliott and, whereas, the said Harry W. Elliott, hereinafter referred to as the party of the first part, has started operations and is now drilling and preparing to drill wells on certain of the above stated leases,

"Now, Therefore, for and in consideration of $...... cash in hand paid and other good and valuable considerations, together with the conditions, covenants, and agreements hereinafter contained and set forth to be performed and kept by the parties hereto, their successors and assigns, set over, transfer and convey until the party of the second part, the said ...... his successors and assigns, an undivided /26700ths interest in and to the aforesaid Leases, Royalties and wells to be drilled on same.

"Provided, further, as a part of the consideration for this assignment, that the party of the first part shall be and he is hereby considered and appointed to act as agent for the party of the second part, his successors and assigns, in reference to the said wells and all future

drilling, developing, equipping, operating, caring for, marketing, and storing or producing from the aforesaid leases, and that the said party of the first part shall have the power to sell and deliver, as lawful agent of the party of the second part, any or all of said leases, provided; that then and there all money and considerations received from such a sale shall then and there be divided and distributed according to the ratio the undivided interest owned by the party of the second part bears to the said leases.

"And for the same consideration the undersigned, for himself and his heirs, successors and assignees or representatives, does covenant with the said assignee, his successors and assigns that he is the lawful owner of said leases and the undersigned has good right and authority to sell and convey the same and that all rentals due and payable thereunder have been duly paid.

"This contract is, in fact and effect, a legal agreement and relationship between the parties of the first part and second part, and constitutes the sole description of this transaction and agreement between the parties of the first part and the second part, and no other agreement, written or oral, shall constitute or bear upon this transaction and agreement.

"In Witness Whereof, the undersigned owner and assignor has signed this instrument, in the presence of witness, this

"......................

"Of Tarrant County, Texas.

"Witness:

"......................"

extension was accepted by the requisite number and amount of his creditors and confirmed by the District Court on the 11th day of July, 1933.

On May 2nd of the same year, Walter A. Todd was appointed Custodian of the properties of the debtor by an order in which he was "authorized to take into his possession, custody and control, all of the properties of the said debtor, whether, real, personal or mixed of whatsoever description, etc." He continued as Custodian under the plan. On June 15, 1936, Todd was appointed Trustee in bankruptcy, and authorized to liquidate the estate. As stated, Elliott had never been adjudged bankrupt to that time. The order appointing Todd Trustee was to date back to May 18, 1936.

In 1935, two unit holders commenced a suit in the state court of Tarrant county, Texas, claiming to represent all of the "Harry W. Elliott Interest Assignments" and alleging that the bankruptcy court had not, at any time, obtained jurisdiction over such interests. They sought a Receiver to bring suit against Todd as custodian and trustee for the purpose of recovering the properties alleged to belong to petitioners and other interest holders similarly situated. A temporary Receiver was appointed, who, after investigation, reported back to the state court that the proceedings in the bankruptcy court had been carried on in good faith and asked permission to ratify and confirm the same, which was given. George H. Campbell was the Receiver in this instance in the state court.

Subsequently, a second suit was commenced in the state court by W. E. Lee, similar in character to the first. One T. C. McMurray was appointed Receiver. On May 4, 1936, he filed in the debtor proceedings of Harry W. Elliott in the bankruptcy court, a motion to dismiss for want of jurisdiction and in the alternative prayed that Todd, Trustee, be ordered to deliver to McMurray as Receiver, "all of the oil leases and appurtenances" thereto held by him. On May 12, 1936, the bankruptcy court overruled said motion, but "without prejudice to the right of T. C. McMurray, Receiver of those whom he represents to file claim or claims in this court for such amounts to which he may be lawfully entitled, to be determined by further orders of this court." Appellants

claim that they had no knowledge of any of these proceedings.

G. H. Campbell, Receiver, filed exceptions to the intervention of Lee and McMurray on the ground that the ownership of these interests had been acquired only a "few weeks" before the suit was filed in the state court asking the appointment of the Receiver.

Appellants claim the only notice which was ever sent them was dated June 14, 1939, directing them to file their claims with Glenn Smith, Referee. They contend that their assignments conveyed to them interests in fee in the property which the bankruptcy court could not divest. This intervention was filed by them on January 10, 1940. Motions to dismiss were made by Campbell, Receiver and McMurray, Receiver, which were sustained and the intervention dismissed.

The court below having retained jurisdiction of the debtor's property through a custodian during the period of extension, as it had the power to do, at the end of the three years, the debts not having been paid as promised or the composition otherwise carried out, appointed Todd as Trustee, as provided in said Section 74, to liquidate the estate and authorize the sale of certain leases, the drilling of other wells, etc. Many wells were drilled and something in excess of $1,000,000 handled and administered by the Trustee.

The debts incurred before bankruptcy proceedings, as well as those during the period of extension were not obligations of the interest holders, but of Elliott, and under the very terms of the assignments, enjoyed priority over claims of such interest holders, who were to receive only the net proceeds of operations.

The court continued to exercise jurisdiction for some seven years, and during this long period, the intervenors did not complain, unless they may be said to have been parties to the state court receivership proceedings. It is not seriously denied that they had actual notice of what was being done, and it's now too late for them to effectively complain. The eggs can not be unscrambled and whether or not the court below should have administered the interests of the intervenors, it did so, no doubt, under the view that by the terms of the assignments and condition of the estate, these interests could not be separated from the debtor's estate. The

court appears to have protected their interests by the reservation of the right to file their claims for participation in the final distribution of the estate.

When the composition proceedings were filed, the debtor had such a relation to the leases, the operations for drilling, etc., it would seem that he might submit such a proposition for readjustment of his affairs, including the working interest in those assignments, as would enable him to work out or pay off the indebtedness to creditors and for the purpose of ascertaining the ultimate interest which the unit holders might have under their contracts. Under the terms of these assignments, this power of control and operation was reserved or given to Elliott and debts incurred thereby had priority over the claims of unit holders.

When the debtor had failed to carry out the terms of the proposition at the end of the three years, the Act itself directed what should be done. The lower court attempted to comply therewith with the result that most of the leases have been disposed of and only a small part of the property remains. If the operations did not pay debts, it would seem that the court had the right to resort to sales for that purpose for the reasons above stated. The court below, should, in the exercise of a proper discretion, allow any of the unit holders of either syndicate to present and prove their claims for participation in the net proceeds, if any, after the payment of creditors and to have adjudged to them the interests to which they are entitled in any of the remaining leases.

The judgment appealed from is affirmed.

SIBLEY, Circuit Judge (concurring).

I concur in the result, but solely on the ground of laches. I do not think either the voluntary or involuntary bankruptcy of Elliott ought to have carried administration of the syndicates, certainly not unless Elliott retained shares, which does not appear. He was the syndicate manager, without compensation except his profit in selling the shares. He was only an agent or trustee, and the owners of the shares could in the beginning have taken their property out of the bankruptcy court, along with the syndicates' debts. But they have waited too long and acquiesced too far. They are now bound by the administration carried on in bankruptcy.