298

Coy C. GOODRICH, Appellant,

v.

John M. ENGLAND, Trustee of the Estate of Goodrich Manufacturing Co., a co-partnership consisting of Coy C. Goodrich and Lulu Goodrich, bankrupts, Appellee.

Nos. 15081, 15501.

United States Court of Appeals
Ninth Circuit.

Nov. 5, 1958.

Howard B. Crittenden, Jr., San Francisco, Cal., for appellant.

Coy C. Goodrich, in pro. per.

Lloyd H. Burke, U. S. Atty., Marvin D. Morgenstein, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Spicer & Whiting, San Francisco, Cal., amicus curiae.

Before DENMAN, BONE and ORR, Senior Circuit Judges.

DENMAN, Senior Circuit Judge.

Coy C. Goodrich, hereafter appellant, appeals from two adverse rulings of the District Court in an action for an arrangement with his creditors instituted by Goodrich under Chapter 11 of the Bankruptcy Act (11 U.S.C.A. § 701 et seq.). Appellant filed the petition for an arrangement on May 27, 1954, pursuant to 11 U.S.C.A. § 722. The petition was referred to a referee in bankruptcy in accordance with 11 U.S.C.A. § 731. Shortly thereafter, on June 29, 1954, appellant petitioned the District Court to dismiss the proceedings. The District Court referred the petition to the appointed referee and after extensive hearings the referee, on December 1, 1954, denied the petition.

On November 15, 1955, the District Court affirmed the referee's ruling and ordered that arrangement proceedings be continued. On December 13, 1955, appellant filed a notice of appeal to this court. Jurisdiction of this court was invoked under 11 U.S.C.A. §§ 716, 47, allowing appeals from interlocutory orders in proceedings under the Bankruptcy Act.

During pendency of the appeal from the District Court's order affirming the referee's denial of appellant's motion to dismiss, appellant failed to submit a satisfactory plan of arrangement. On April 25, 1956, the United States, as one of appellant's creditors, petitioned the referee to exercise his power to adjudicate Goodrich a bankrupt, pursuant to 11 U.S.C.A. § 776(2). That section provides:

" * * * if an arrangement * * * is not accepted at the meeting of creditors or within such further time as the court may fix * * * the court shall * * * (2) * * * enter an order * * * either adjudging the debtor a bankrupt and directing that bankruptcy be proceeded with * * * or dismissing the proceeding * * * whichever in the opinion of the court may be in the [best] interests of the creditors."

At a hearing held by the referee the United States, the California Labor Commission, and the attorney in fact for 51 creditors joined in urging that it would be "in the best interests of the creditors" that Goodrich be adjudicated a bankrupt. On May 18, 1956, the referee adjudicated Goodrich a bankrupt and ordered that bankruptcy be proceeded with. The District Court affirmed this order and Goodrich brought his second appeal to this court.

Appellant urges identical specifications of error as to each of the adverse orders below:

1) That the Bankruptcy Court lacked personal jurisdiction over him; 2) That his evidence established as a matter of law that he was fraudulently induced to initiate the arrangement proceedings; 3) That it was in the best

interests of his creditors that the arrangement proceedings be dismissed and bankruptcy not be proceeded with. The appeals will therefore be treated as one.

I. *Jurisdiction of the District Court over appellant.*

The initial petition in this case was filed in the name of "Goodrich Manufacturing Company, a Partnership composed of Coy C. Goodrich and Lulu Goodrich." No partnership ever existed between appellant and his wife, Lulu Goodrich, and appellant was at all times the sole proprietor of the business known as the "Goodrich Manufacturing Company." Appellant testified that he intended by the petition to place his personal estate and debts before the lower court and that he erroneously described the Goodrich Manufacturing Company as a partnership upon advice of counsel, who apparently believed that such procedure was necessary in order to adjudicate whatever community property interest appellant's wife might have in the assets of the company. Appellant moved to dismiss the petition on grounds that it gave the lower court no jurisdiction over his personal estate and debts but that its jurisdiction was limited to the nonexistent debts and assets of a nonexistent "fictitious partnership."

Resisting appellant's petition to dismiss, the United States moved that the original petition be amended to show that it was the petition of Coy C. Goodrich, an individual, doing business as the Goodrich Manufacturing Company. The lower court ruled that the referee should "proceed with the administration of the estate of Coy C. Goodrich * * * with or without amendment to the petition." This order in effect granted the motion to amend and made it clear that the court was henceforth asserting jurisdiction over appellant's personal estate. On remand to the referee, the proceedings were continued as though amendment had been made, although the pleadings and the title of the cause were never actually amended. While this failure to effectuate the grant of amendment might be grounds for attack by one of Goodrich's creditors, we do not feel that Goodrich himself was prejudiced by the technical omission.

The question thus presented to this court is whether the District Court properly granted the motion to amend.

Appellant contends that the lower court had no power to substitute his name for that of the partnership by amendment because it had no jurisdiction over him personally. This same jurisdictional objection was raised in Missouri, Kansas & Texas Railway Co. v. Wulf, 1913, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355. In that case, plaintiff instituted in her own name an action against defendant Railway Company for the death of her son. The Supreme Court held that it was proper to permit amendment four years after commencement of the action, to show that plaintiff was in fact suing as executrix on behalf of her son's estate, and that the amendment dated back to the date of commencement, thus defeating the statute of limitations.

The Court stated at page 575 of 226 U.S., at page 137 of 33 S.Ct., that the controlling consideration was that "aside from the capacity in which the plaintiff assumed to bring her action, there is no substantial difference between the original and amended petitions" and that the amendment, "without in any way modifying or enlarging the facts upon which the action was based, in effect merely indicated the capacity in which the plaintiff was to prosecute the action." The argument that the amendment brought before the Court a new cause of action which required a fresh assertion of jurisdiction was rejected. This decision was followed in the similar case of Salyer v. Consolidation Coal Co., 6 Cir., 246 F. 794.

In the instant case, appellant sought to put before the Court his personal estate and debts. His petition and schedule describe no debts of a "fictitious partnership", but exclusively those of himself as an individual. Thus "there is no substantial difference between the original and the amended petitions."

There have in addition been numerous cases which have ruled on the permissibility of amendment to correct an error in the designation of a party defendant. Amendments have been permitted to change the name of one corporate defendant to that of another allied corporation;[1] to show that the defendant was an individual doing business under a firm name instead of a corporation;[2] to show that the defendant was a partnership instead of a corporation;[3] and to show that the subject of an involuntary bankruptcy proceeding was an individual instead of a partnership.[4] In these cases there have been two controlling considerations: First, what entity did the plaintiff intend to bring before the court?[5] And second, was the party resisting amendment sufficiently apprised of the pendency of the action and adequately served with process?

In the instant case it is undisputed that appellant intended to obtain the benefits of an arrangement for his personal estate and debts. Moreover, it cannot be argued that he was unaware of the proceedings or that it would be unjust to him to amend the title to the action to comply with his own intentions. We hold that the appellant in his individual capacity was at all times subject to the jurisdiction of the District Court and that the Court properly granted the motion to amend.

II. *Did the Lower Court Err in Refusing to Dismiss Appellant's Petition for Arrangement?*

Once a petition for an arrangement has been filed, it may be withdrawn only with the permission of the Court.

There is no absolute right to dismissal. 11 U.S.C.A. § 712 is as follows:

"Jurisdiction, powers, and duties. Where not inconsistent with the provisions of this chapter, the jurisdiction, powers, and duties of the court shall be the same—* * *.

"(2) Where a petition is filed under section 722 of this title as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered at the time the petition under this chapter was filed."

It is clear that there is no right to withdraw a voluntary petition for bankruptcy after adjudication. In re Weare, D.C.S.D.N.Y.1949, 87 F.Supp. 413. This section, read in conjunction with 11 U.S.C.A. § 776(2) of Chapter 11, which gives the court power to adjudicate the petitioner a bankrupt should his arrangement be withdrawn or abandoned prior to acceptance, makes it clear that the lower court has discretion to refuse to dismiss arrangement proceedings where dismissal is not in the best interests of petitioner's creditors.[6]

*Fraud and Coercion.*

Appellant next contends that the proceeding should have been dismissed because his evidence established as a matter of law that he had filed his petition for arrangement as a result of the coercion and fraudulent inducement of representatives of the Department of the Army. We need not decide whether, if established, a showing of fraud or coercion might compel dismissal of a Chapter 11 proceeding, since the lower court was

1. Gifford v. Wichita Falls & Southern Ry. Co., 5 Cir., 1955, 224 F.2d 374. See also Grandey v. Pacific Indemnity Co., 5 Cir., 1954, 217 F.2d 27.

2. Nelson v. Jadrijevics, 5 Cir., 1932, 59 F. 2d 25.

3. Bowles v. Marx Hide & Tallow Co., D.C. Ky.1945, 4 F.R.D. 297.

4. In re Young, D.C.Mass.1915, 223 F. 659.

5. "The test should be whether, on the basis of an objective standard, it is reasonable to conclude that the plaintiff had in mind a particular entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or whether plaintiff actually meant to serve and sue a different person." 2 Moore's Federal Practice, 2nd Ed., § 444, p. 1042.

6. See MacNeil v. Gargill, 1 Cir., 1956, 231 F.2d 33.

clearly correct in finding that the evidence disclosed no fraud or coercion in this case.

For several years prior to filing his petition for an arrangement, appellant had been engaged primarily in manufacturing certain small arms tools pursuant to a contract with the Department of the Army. By February, 1954, an accumulation of debts and a lack of working capital had made it impossible for appellant to continue performance under this contract without receiving substantial "progress payments" from the Department of the Army. The contract gave the Army's local supervisory official authority to advance up to 75% of the cost of items in progress, prior to the time of delivery.

In April, 1954, appellant owed approximately $6,800 in back wages and had other substantial debts due to various creditors. The progress payments were only authorized to meet future operating costs, and could not be used to discharge these existing debts. Several creditors were threatening attachment proceedings and several of appellant's subcontractors were refusing to continue performance under their contracts until they received payment for past work. It was therefore apparent that even if he were to receive increased progress payments, appellant might not be able to complete his contract unless he received some type of moratorium on existing indebtedness.

On or about April 9, 1954, a meeting was held to discuss appellant's financial difficulties. Appellant, one Becker, an employee of appellant, representatives of the Department of the Army, and various other creditors were present. It was at this meeting that statements were made by the Department of the Army representatives which allegedly constituted coercion and fraud.

The only testimony regarding this meeting was that of appellant and Becker. According to their testimony, the government representatives told appellant that unless he instituted an arrangement proceeding, his military contract would have to be terminated.

The government representative also told appellant that as soon as he began the arrangement proceeding, $6,800 would be made available to him for payment of back wages and approximately $80,000 in working capital. There is no evidence of record indicating whether or not these last promises were kept or even whether the contract was terminated. It is apparent that the lower court's finding that this did not amount to such coercion or fraud as to compel dismissal was not clearly erroneous. As for coercion, appellant was free to challenge the government's termination of his contract through the appropriate administrative channels if he believed it improper. The government's threat to terminate, in the light of appellant's inability to proceed with performance, cannot be regarded as unreasonable. If it had a coercive effect, this was a coercion which it was entitled to exert.

As for the alleged fraud, it can only be based upon the failure of the government to keep its promises to make certain funds available and not to terminate. However, there is no evidence whatsoever in the record to indicate that the government representatives did not intend to keep these promises at the time they were made. There is no evidence to show why they were not kept or even that they were not kept. We hold that the lower court's finding that there was no fraud was not clearly erroneous.

III. *Standing of the United States.*

Petitioner next contends that the government had no standing to object to dismissal of the petition. We regard this contention as irrelevant. Several other creditors were present at the hearing and joined in urging that there be no dismissal.

IV. *The Best Interests of the Creditors.*

Appellant's final contention, that dismissal and not bankruptcy would have been in the best interests of his creditors, also lacks merit. At the hearings on appellant's motion to dismiss, one creditor testified that he would like the hearings dismissed and two creditors, not

including the government, requested that it not be dismissed. At the subsequent hearings on whether bankruptcy should be proceeded with, no creditors requested dismissal while the United States, the Labor Commission of the State of California, acting on behalf of wage claimants for $10,000, and an attorney in fact for fifty creditors all requested that bankruptcy be proceeded with on grounds that Goodrich's estate was at that time of insufficient value to satisfy all unsecured creditors. We cannot say that the referee abused his discretion in adjudicating appellant a bankrupt.

However, during the period since the referee determined that it would be in the best interests of appellant's creditors to adjudicate him a bankrupt, there has apparently occurred a substantial shift in appellant's relations with his creditors. The Armed Services Board of Contract Appeals, an administrative board, has held that appellant had "excusable cause" for his failure to perform his government contract. The finality of this determination and its precise effect on the Government's claim against appellant for $325,000.86 cannot, of course, be litigated in the present proceeding. It may be that finally it will be held that appellant owes the government nothing and that appellant may recover all or part of his claims against the government stated in his original petition of $87,500 for balance due on his contract with the government and $162,000 for the value of the machinery and equipment taken from him by the government.

Appellant claims that approximately 90% of his creditors are now willing that the instant proceedings be dismissed in order that appellant, and not a trustee in bankruptcy be allowed to litigate his alleged claim against the government. He further claims that he has agreements with these creditors in which he has waived the statute of limitations as to their claims and has offered to waive the statute as to the other creditors if the bankruptcy proceeding is dismissed, a matter for consideration if there be ordered a dismissal. If these claims are true it may well be that it is no longer in the best interests of creditors that bankruptcy be proceeded with. This, however, is a question which should appropriately be left to the determination of a referee in bankruptcy.

We therefore remand this case to the lower court, with directions to refer it to a referee in order that he may determine, in the light of such evidence as the parties may present, whether dismissal or an adjudication of bankruptcy will at this time best protect the interests of appellant's creditors.