Howard B. CRITTENDEN, Jr., Appellant,

v.

Kal W. LINES, Trustee in Bankruptcy of the Estate of Coy C. Goodrich, Bankrupt, Appellee.

No. 18576.

United States Court of Appeals Ninth Circuit.

Feb. 7, 1964.

Rehearing Denied March 18, 1964.

---

Howard B. Crittenden, Jr., and Julian P. Beek, San Francisco, Cal., for appellant.

Glicksberg, Kushner & Goldberg and Lawrence Goldberg, San Francisco, Cal., for appellee.

Before HAMLEY, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant appeals from an order of the District Court confirming the order of the Referee in Bankruptcy in denying appellant's "Petition to Determine Title to Government Ordnance Contracts and to Real Property and Proceeds Thereof."

### PRIOR HISTORY

On May 27, 1954, Coy C. Goodrich filed a petition in the district court pursuant to 11 U.S.C. § 722 for an arrangement under Chapter 11 of the Bankruptcy Act. The petition was filed in the name of "Goodrich Manufacturing Company, A Partnership Composed Of Coy C. Goodrich And Lulu Goodrich." In fact, no such partnership existed. Coy C. Goodrich was at all times the sole proprietor of the business known as Goodrich Manufacturing Company. Shortly after reference of the petition to a referee in bankruptcy, Coy C. Goodrich petitioned the

district court to dismiss the proceedings on the grounds that the court lacked jurisdiction over his personal estate. Upon reference of the petition to dismiss, and after hearings thereon, the referee denied the petition. On November 15, 1955, the district court affirmed the referee's ruling and ordered that arrangement proceedings of the petitioner, Coy C. Goodrich, continue with or without amendment to the petition. Coy C. Goodrich appealed from this order to this court. While this appeal was pending, and on May 16, 1956, the referee adjudged "Goodrich Manufacturing Company, * * * copartnership" a bankrupt and directed that bankruptcy proceed. A contest for trustee developed and fathered further litigation, the story of which is told elsewhere.[1]

On July 27, 1956, the United States filed a creditor's claim in the bankruptcy proceedings. This claim arose out of two contracts between the Department of the Army and Coy C. Goodrich, as an individual doing business as Goodrich Manufacturing Co., for the manufacture of certain small arm tools which were entered into in 1952. By 1954, Goodrich being in financial distress, several of his creditors were threatening attachment proceedings and his subcontractors were refusing to continue performance under their contracts until they received payment for past work. On January 6, 1955, the United States terminated both of the contracts for the alleged default of Goodrich. Thereafter an appeal was taken from the finding of default to the Armed Services Board of Contract Appeals. While this appeal was pending, the United States petitioned for an adjudication of bankruptcy of "Goodrich Manufacturing Company, a partnership * * *" on the ground that the necessary creditor acceptances required to be filed in the Chapter 11 arrangement had not been filed within the time fixed by the referee for that purpose. On May 16, 1956, this petition was granted, as mentioned before. The order of adjudication was confirmed by the district court on December 3, 1956. An appeal from this order was taken to this court.

On February 11, 1958, the Armed Services Board of Contract Appeals ruled that the two contracts had been terminated for the convenience of the United States. On November 5, 1958, the appeals from the district court's orders of November 15, 1955, (affirming denial of the petition to dismiss Chapter 11 proceedings) and of December 3, 1956, (affirming adjudication of bankruptcy) were consolidated and decided in Goodrich v. England, 262 F.2d 298 (9th Cir.1958). In that case we noted that Coy C. Goodrich had intended to place his personal estate and debts before the lower court and we held that notwithstanding the misdenomination of the proceedings, Coy C. Goodrich in his individual capacity was at all times subject to the jurisdiction of the district court. We further held, 262 F.2d at 303:

> "We cannot say that the referee abused his discretion in adjudicating appellant [Coy C. Goodrich] a bankrupt."

There being a dispute whether Goodrich's creditors desired dismissal of the proceedings in such posture, in light of the action taken by the Armed Services Board of Contract Appeals, we remanded for the purpose of determining whether dismissal would be in the best interests of his creditors. Upon remand the referee determined that dismissal was not in the best interests of Goodrich's creditors. The district court affirmed the referee's ruling. On appeal, this court affirmed in Goodrich v. Lines, 284 F.2d 874 (9th Cir. 1961), and further held that the remand ordered in Goodrich v. England, supra, did not have the effect of setting aside the adjudication of bankruptcy.

In 1959, the trustee disposed of much of the estate. On July 28, 1959, a large quantity of personal property consisting

---

1. In re Goodrich Manufacturing Co., 168 F.Supp. 940 (N.D.Cal.1956); England v. Lines, 262 F.2d 303 (9th Cir. 1958); Goodrich v. Lines, 284 F.2d 872 (9th Cir. 1960); Ibid., 284 F.2d 874 (9th Cir. 1960).

of machinery, tools and items of manufacture was sold to one Newburg. In September of 1959 the trustee joined with Coy C. Goodrich and Lulu O. Goodrich in a conveyance of the real property upon which the business was situated to Schlage Lock Company. The sale was confirmed and was pursuant to an agreement between the trustee and Schlage which was approved and authorized by the referee after a hearing thereon. Paragraph 9 of that agreement reads as follows:

"It is understood and agreed that the real property to be sold hereunder, stands, of record, in the names of Coy C. Goodrich and Lulu O. Goodrich, his wife, as joint tenants. Lulu O. Goodrich agrees to join with the trustee in conveying any and all right, title or interest she may have in said real property to Schlage. It is also understood and agreed that the purchase price * * * to be received by the trustee from Schlage for said real property shall belong to the trustee free and clear of any claim by Lulu O. Goodrich, as a joint tenant, or otherwise.

"It is understood and agreed that part of the consideration for the agreement by the trustee to sell, and by Schlage to purchase, said real property, is the promise herein of Lulu O. Goodrich to join with the trustee in conveying all of her interest in said real property to Schlage, and her promise herein to waive and release any rights she might have in and to the said proceeds of sale * * *."

In May of 1960 the trustee filed a claim against the United States in the court of claims for damages in the sum of $1,389,230.17 with respect to the two government contracts. The United States maintained there was nothing due the trustee and that its claim against the bankrupt's estate was meritorious. The United States also claimed a substantial amount of the proceeds from the sale of the personal property to Newburg on the basis of a claim of title to certain of that property. On April 24, 1961, the referee filed an order, after a hearing, authorizing the trustee to compromise with the United States all the claims between those parties. A compromise was effected whereby the United States paid the trustee $40,000.00 and all claims were withdrawn.

## HISTORY PRELIMINARY TO PRESENT APPEAL

The caption in each and every pleading and paper filed in this matter has referred to the estate of "Goodrich Manufacturing Company, a partnership." In Goodrich v. England, supra, we noted that although the technical error could not prejudice Goodrich himself, such might be grounds for attack by one of his creditors. Howard J. Crittenden, appellant herein, has alleged that he is a creditor of Coy C. Goodrich and of Lulu O. Goodrich. Appellant's claim is based upon alleged services rendered as attorney for the Goodrichs between June 14, 1954, and September 10, 1959, having an alleged value (including costs and expenses) of $28,225.00.

On June 5, 1961, appellant filed a document entitled "Petition For Marshalling of Assets, Petition for Priority of Allowance Of Certain Debts And Attorney's Fees." In this document appellant alleged the following: his employment by Coy and Lulu Goodrich as individuals and by Goodrich Manufacturing Co., a partnership; that such partnership never existed in fact; that Crittenden rendered certain professional services by way of (1) attempting to dismiss the Chapter 11 proceedings on the ground that no partnership existed, (2) attempting to aid in the completion of the government contracts, and (3) attempting to obtain the Armed Services Board of Contract Appeals ruling; that Crittenden, at the request of Coy C. Goodrich had appeared before the Ninth Circuit Court of Appeals in the case of Goodrich v. England, supra, and argued that the only entity before the court was the partnership; that "it was solely because of and a result of the extensive work done by your petitioner [Crittenden] that this matter involving

the entity before the Court was clarified, and only by this proceeding was the estate determined to be that of Coy C. Goodrich, an individual"; that notwithstanding that determination, and by virtue of the failure to correct the captions in the papers on file, the bankrupt in the instant proceedings was the partnership entity which had no creditors; that Crittenden, as creditor of the individuals Coy and Lulu Goodrich was entitled to a preference and a marshalling of assets; and that Crittenden was entitled to relief in conformity with the suggestion by this court in Goodrich v. England, supra, that the technical error might be grounds for attack by one of Coy C. Goodrich's creditors.

At the hearings on appellant's petition to marshal assets, etc., appellant advanced a number of theories upon which he felt relief could be predicated, including the following: That the Goodrich v. England decision did not hold that Coy C. Goodrich was the adjudicated bankrupt; that there were two bankrupt entities— a partnership up to the time of the Goodrich v. England decision and an individual thereafter; that Crittenden, as creditor of Goodrich, would be prejudiced by a relation back of the decision in Goodrich v. England; and that General Order 44 in Bankruptcy, 11 U.S.C. foll. § 53 (1939), [relating to appointment of attorneys] did not apply to him.

Following these hearings, the referee found: that all of the services allegedly rendered by Crittenden for which he sought compensation were rendered after the filing of the original Chapter 11 petition; that during the period in which the alleged services were rendered there was either a receiver or a trustee in office representing the estate of the bankrupt; that Crittenden had knowledge of the fact that the bankrupt and his wife were not partners; that Crittenden had knowledge of the November 15, 1955, order of the district court (denying petition to dismiss Chapter 11 proceedings); and that Crittenden was at no time, under General Order 44 or otherwise, appointed to represent any party in the proceedings. The referee denied Crittenden's petition. The referee's order was affirmed by the district court on March 30, 1962. The district court's order reads, in part, as follows:

"Crittenden asserts that the bankrupt before the Court is not Coy C. Goodrich, an individual, but rather a partnership * * *. He argues that consequently when the Trustee in Bankruptcy took possession of certain assets of Goodrich in 1959, he took them as assets of an unadjudicated general partner, and therefore took them subject to the intervening claim of Crittenden for legal services.

"However, the question of the identity of the bankrupt before the Court in these proceedings has long since been settled by an order of Judge Goodman entered November 15, 1955 and affirmed by the Court of Appeals on November 5, 1958, 262 F.2d 298. Judge Goodman's order and the decision on appeal established that no partnership between Goodrich and his wife ever existed, and that Goodrich as an individual was the bankrupt before the Court throughout these proceedings. Moreover, from the time he commenced to render legal services to Goodrich, Crittenden was aware that the alleged partnership never existed.

"Crittenden notes that certain action taken in these proceedings has been inconsistent with the holding that Goodrich, as an individual, is the bankrupt before the Court and that various difficult problems in the administration of the estate may consequently arise. This may very well be so, but such matters are not now before the Court."

### THE PRESENT APPEAL

On July 10, 1962, appellant filed a "Petition to Determine Title to Government Ordnance Contracts and to Real Property and Proceeds Thereof." In this petition, appellant alleged that the

trustee had filed no written assumption of the government contracts within sixty days after the adjudication of bankruptcy and therefore the proceeds of the compromise of those contracts did not pass to the trustee. He further alleged that the conveyance of Lulu O. Goodrich's undivided one-half of the real property was a fraudulent conveyance, and that therefore the trustee is not entitled to the proceeds from its sale. After a hearing, the referee filed an order denying the petition on the following grounds: as an unsecured creditor of Coy C. Goodrich, the bankrupt, and his wife, appellant has no standing to intervene in the bankruptcy proceedings; that the government contracts were not executory within the meaning of § 70, sub. b of the Bankruptcy Act, 11 U.S.C. § 110, sub. b, at the time of adjudication and therefore no assumption by the trustee was required; that the trustee had by conduct assumed the contracts; that by virtue of the compromise of claims between the trustee and the government, the sale of the real estate, the change of position by the parties thereto, and the failure of appellant, with knowledge of the facts, to object thereto, appellant is barred by laches and estoppel from denying the trustee's title.

The district court affirmed and adopted as its own the referee's order denying the petition. The present appeal is from the district court's affirmation of this order.

■ On appeal, appellant devotes an inordinate amount of time pursuing the theory that the bankrupt entity should not be considered Coy C. Goodrich as an individual in determining the claims of appellant. This question has long been settled. The question of prejudice, if any, to appellant with respect to the effect of our decision in Goodrich v. England was necessarily determined in disposing of his petition to marshal assets of the non-existent partnership. No appeal having been taken from the district court's determination thereupon, appellant is barred by res judicata from asserting it in the instant matter. Appellant's remaining specifications of error concern the trustee's failure to file a written assumption of the government contracts within sixty days after the adjudication, and the alleged fraudulent conveyance by Lulu Goodrich.

■ Under § 70, sub. b of the Bankruptcy Act, only executory contracts are required to be assumed by the trustee. The trustee is vested by law with any rights of action arising from non-executory contracts which the bankrupt may possess. Bankruptcy Act, § 70, sub. a (6), 11 U.S.C. § 110, sub. a(6); Tobin v. Plein, 301 F.2d 378 (2d Cir. 1962). The two contracts in question had been terminated by the Contracting Officer on January 6, 1955. The letters of termination with respect to each contract read, in part, as follows:

"You, and each of you as your interests may appear, are hereby given notice that Contract No. [giving number] dated 29 February, 1952, is terminated for default under Paragraph 11 of the General Provision entitled Default, and that the right to proceed with further performance under the said contract is terminated."

\* \* \*

"Under the provisions of the Default Clause of the contract referred to above, you are informed that the supplies required to be delivered to the Government under the contract shall hereafter be procured by the Government in the open market against the Contractor's account and that the Contractor will be held liable for any excess costs occasioned to the Government thereby. The Government also hereby reserves all rights and remedies provided by law and/or under the contract, in addition to the charging of excess costs provided above."

■ It is clear from the quoted portions of the letters of termination that no further performance was contemplated, required or authorized on the part of the bankrupt. Indeed, appellant testified at

the hearing on his petition to determine title that the United States Attorney had threatened contempt proceedings against the bankrupt if he attempted to perform the contracts after he was advised of the termination thereof. Appellant would have us hold that in spite of the foregoing, the bankrupt was obligated to future performance by virtue of the following portion of Regulation No. 7-103.12(a) of the Armed Services Procurement Regulations:

"*  *  *  In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

But this regulation does not support appellant's contention since the Contracting Officer's decision expressly negatived the future performance of the contract by the bankrupt. Whatever the consequences might be in circumstances where the Contracting Officer's decision requires performance, we are not concerned with the foregoing regulation here. That the contracts were eventually declared terminated for the convenience of the Government is irrelevant to the question of their executory nature. At the time of adjudication, the contracts were not ones "which call for performance in futuro," and were therefore not executory within the meaning of § 70, sub. b. In re San Francisco Bay Exposition, 50 F.Supp. 344, 346–347 (N.D.Calif.1943); In re Capital Service, 136 F.Supp. 430 (S.D.Calif.1955).

Turning to the real property, it seems to be appellant's theory that Lulu held an undivided one-half interest in the land as joint tenant; that her conveyance of that interest to Schlage Lock Co., and her agreement to turn over all proceeds therefrom to the trustee was without consideration and rendered her insolvent; that the transfer was therefore in fraud of her creditors—a status enjoyed by appellant; and that therefore the trustee holds the proceeds of the property impressed with an equitable lien or a constructive trust in appellant's favor.

■ The briefs of the parties are sadly inadequate concerning the status of appellant and his ability to obtain relief. A few general observations may be helpful in this regard. The bankruptcy court has summary jurisdiction to determine title to property in custodia legis. There is no doubt that appellant invoked the court's summary jurisdiction by his petition to determine title, which may be deemed analogous to a petition for reclamation. Our jurisdiction, though not challenged, resides in Bankruptcy Act § 24, sub. a, 11 U.S.C. § 47, sub. a, from a final order in a "controversy arising in proceedings in bankruptcy." In re Christ's Church of the Golden Rule, 172 F.2d 523 (9th Cir. 1949); 2 Collier, Bankruptcy § 24.29 (14th ed. 1962).

■■ Viewed as analogous to one for reclamation, the present petition is not subject to the time limits prescribed for the filing of claims.[2] However, it is clear that undue delay will bar relief under the doctrine of laches.[3] The referee found that appellant was guilty of laches and the district court affirmed and adopted that finding. Unless clearly erroneous, that finding will not be disturbed.[4]

■ Appellant's claim of title to the proceeds of the sale of the land is at best contingent. It depends entirely upon the validity of his claim against Lulu O.

2. 3 Collier, Bankruptcy § 57.34.

3. Dickey v. Todd, 116 F.2d 979 (5th Cir. 1941); In re Noble, 21 F.Supp. 840 (D. N.Y.1937); Leonard v. Field, 71 F.2d 483 (9th Cir. 1934).

4. Kimberly Corporation v. Hartley Pen Company, 237 F.2d 294 (9th Cir. 1956); Boris v. Hamilton Manufacturing Company, 253 F.2d 526 (7th Cir. 1958).

Goodrich, a stranger to the bankruptcy proceedings, and upon the application of California law of fraudulent conveyances. Appellant holds no judgment against Lulu O. Goodrich; indeed, he admitted at the hearing he has made no demand upon her for the amount claimed to be due him. It is not clear from his petition whether he claims the full $28,-225.00 or a portion thereof to be owing him by Lulu O. Goodrich. There is insufficient evidence in the record upon which to determine the nature of her interest, if any, in the land in question. The order of October 27, 1959, (approving the sale of the land to Schlage) recites that the property stands *of record* in joint tenancy; the order of November 15, 1955, (affirming denial of petition to dismiss Chapter 11 proceedings) recites and her interest "in and to the assets, real or personal, of said business, was her community interest therein, as his wife, under the laws of the State of California." There is no evidence in the record, other than appellant's own assertion, that Lulu O. Goodrich's agreement to turn over the proceeds of the sale of the land was made while she was insolvent or that she was thereby rendered insolvent, as contemplated by Cal.Civ. Code § 3439.04—if such is the law appellant relies upon.

All of these matters are factual issues upon which appellant's claim of title would hinge. Pursuit of these issues would necessarily cause considerable delay of the bankruptcy administration. In view of the fact that appellant was intimate with the entire tortured course of these proceedings, and in view of the endless opportunities he had to test his theories (e. g. at the hearings on the petitions to approve the contract of sale or to confirm the sale in 1959), the referee was fully justified in ruling that laches barred appellant from litigating these side issues on the eve of closing. The same is true of appellant's attempt to reach the proceeds from the compromise of the claims arising from the government contracts.

The district court's order is affirmed.