**JARROW FORMULAS, INC.,**
**Plaintiff–Appellant,**

v.

**NUTRITION NOW, INC.,**
**Defendant–Appellee.**

**No. 01–55154.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 2002.

Filed June 4, 2002.

Neal T. Wiener, Beverly Hills, CA, argued the cause for the plaintiff-appellant.

John A. Lawrence, Radcliff Frandsen Dongell & Lawrence, LLP, Los Angeles, CA, argued the cause for the defendant-appellee. Matthew Clark Bures was on the brief.

Before ARCHER,* O'SCANNLAIN, and SILVERMAN, Circuit Judges.

* The Honorable Glenn L. Archer, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

O'SCANNLAIN, Circuit Judge.

We must decide whether laches bars a manufacturer of nutritional supplements from suing its competitor for false advertising under the Lanham Act when the analogous state statute of limitations period has expired.

## I

Nutrition Now, Inc. ("Nutrition Now") distributes PB8, a popular probiotic nutritional supplement designed to aid digestion. Since initial distribution in 1985, Nutrition Now has made three central claims. First, PB8 contains fourteen billion "good" bacteria per capsule. Second, PB8 contains eight different types of bacteria. Third, PB8 does not require refrigeration. Nutrition Now has always prominently displayed these claims on PB8's product label. The claims also have played a central role in Nutrition Now's marketing campaign, which totals "hundreds of thousands" of dollars per year and includes the use of national magazine advertisements.

Jarrow Formulas, Inc. ("Jarrow") offers a competing probiotic supplement. In 1993, Nutrition Now and Jarrow participated in an industry trade show. Jarrow Rogovin, the president of Jarrow, approached Martin Rifkin, the president of Nutrition Now, at the show. Rogovin vigorously complained to Rifkin that Nutrition Now's claims regarding PB8 were false and misleading.

A few months later, Jarrow filed a complaint with the Grievance Committee of the National Nutritional Foods Association. Jarrow alleged that Nutrition Now's claims were "false, unfair, misleading, and illegal" and amounted to "consumer fraud." Jarrow claimed that Institut Rosell ("Rosell"), the manufacturer of its competing product, had tested PB8 and verified that the claims were false. Jarrow urged the Committee to take appropriate action, including releasing a statement declaring the claims false and misleading.[1]

On the following day, Jarrow sent a letter to its customers urging them to avoid PB8. The letter explained that PB8 "has been tested, and each test has disclosed a dead, worthless product making ridiculous claims. It is a waste of money and cheats the consumer."

A few days later, Rogovin sent a letter to Nutrition Now on behalf of Jarrow. The letter stated, "I have every intention of putting an absolute and total end to the false claims of your company regarding PB8." Rogovin promised to send PB8 out for independent testing in order "to bury the 'product.'" He stated, "I have given you ... a lot of time to clean up your act. Time's up."

The following day, Rogovin sent a letter expressly threatening litigation. The letter stated, "I could be suing you for unfair competition already. I could also have just turned Nutrition Now in to the Federal Trade Commission (FTC) for consumer fraud."

Undeterred, Nutrition Now continued to make its claims about PB8. Indeed, Nutrition Now kept the product label unchanged and continued to use the claims as a central part of its marketing campaign. Jarrow, despite its threat of litigation in 1993, waited until August 2000 to file suit. In its suit, Jarrow asserts that Nutrition Now's claims are false and misleading in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Jarrow also sued under California law for unfair competition, Cal. Bus. & Prof.Code

---

1. Ultimately, the Committee took no action.

§ 17200, and for false advertising, *id.* § 17500.

Nutrition Now moved for summary judgment on the grounds that the statutes of limitation and laches bar Jarrow's claims. The district court held that Jarrow's action was barred by laches, and dismissed the suit. The court declined to address the statutes of limitation question.

In this timely appeal, Jarrow claims that (1) it did not exercise unreasonable delay in filing suit, (2) Nutrition Now would not suffer prejudice if the suit were to proceed, (3) laches, even if generally applicable, does not bar its claim for prospective injunctive relief, (4) the public interest would not be served by barring suit, (5) Nutrition Now is precluded by the unclean hands doctrine from asserting laches, and (6) the district court erred in failing to continue summary judgment pending additional discovery.

## II

As a threshold matter, it must be observed that we have expressed inconsistent views of the proper standard of review of the grant of summary judgment on the basis of laches. In *Jackson v. Axton,* 25 F.3d 884, 888 (9th Cir.1994), we remarked, "This court has reviewed a grant of summary judgment on grounds of laches both de novo and for abuse of discretion."[2] The court cited *Soules v. Kauaians for Nukolii Campaign Committee,* 849 F.2d 1176, 1180 (9th Cir.1988) as reviewing de novo and *Corrington v. Webb,* 375 F.2d 298, 298 (9th Cir.1967) as reviewing for an abuse of discretion. The *Jackson* discussion was dicta, as the court avoided the question, holding that the result would be the same under either standard. 25 F.3d at 888.

Indeed, outside the context of summary judgment, we have expressed further conflicting statements as to the proper standard when the district court enters judgment on the basis of laches. In some cases we have reviewed the district court's laches determination for an abuse of discretion, while in others we have reviewed for clear error; in no cases have we conducted a de novo review. *Compare, e.g., Telink, Inc. v. United States,* 24 F.3d 42, 47 & nn. 10–11 (9th Cir.1994) (abuse of discretion), *Russell v. Price,* 612 F.2d 1123, 1125 (9th Cir.1979), *and Kimberly Corp. v. Hartley Pen Co.,* 237 F.2d 294, 304 n. 9 (9th Cir.1956), *with Tagaropulos, S.A. v. S.S. Santa Paula,* 502 F.2d 1171, 1171 (9th Cir.1974) (clear error), *Carter–Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 803 (9th Cir.1970), *and Crittenden v. Lines,* 327 F.2d 537, 543 (9th Cir.1964).

We disagree with *Jackson*'s dicta that any of our cases have suggested that we review the district court's laches determination de novo. *Jackson* relied solely upon our decision in *Soules,* 849 F.2d at 1180. In *Soules,* the district court had granted summary judgment on the basis of laches. We broadly stated, "Reviewing this grant of summary judgment de novo ... we affirm...." *Id.* (internal citations omitted). After a thorough review of the district court's reasoning, we concluded, "that the district court did not err in barring appellants' ... claim ... on the ground of laches." *Id.* at 1182.

Contrary to *Jackson*'s suggestion, *Soules* cannot be fairly read as applying a de novo standard to the district court's. laches determination. When a district court grants summary judgment on the basis of laches, we review certain aspects of the district court's decision de novo. For example, we review de novo whether

the district court inappropriately resolved any disputed material facts in reaching its decision. *See Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1035–36, 1041 (9th Cir.2000); *Brown v. Continental Can Co.*, 765 F.2d 810, 815 (9th Cir.1985); *see also Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir.1999); *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1082 n. 16 (5th Cir.1997). We also review de novo whether laches is a valid defense to the particular cause of action. *See Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 235 F.3d 1184, 1193 (9th Cir. 2000); *Jackson*, 25 F.3d at 886. However, the district court's application of the laches factors is entitled to deference, not to be reviewed de novo. *See Bailey v. United States*, 412 F.2d 320, 320 (9th Cir.1969); *Corrington*, 375 F.2d at 298; *see also Hot Wax, Inc.*, 191 F.3d at 818; *Exxon Corp.*, 109 F.3d at 1082 n. 16.

Our decision in *Soules* is not to the contrary. *Soules* broadly stated that the district court's grant of summary judgment on the basis of laches is reviewed de novo. 849 F.2d at 1180. *Soules* made this statement in a single sentence with no further discussion or analysis. We do not read *Soules* to hold that all aspects of the district court's laches determination are reviewed de novo. If *Soules* intended to adopt this holding, we would expect the court to have discussed why an abuse of discretion or clear error standard was inappropriate. Indeed, such a holding would seemingly conflict with cases such as *Corrington*, 375 F.2d at 298, in which we reviewed application of laches on summary judgment for an abuse of discretion. However, *Soules* did not discuss, let alone attempt to distinguish, cases such as *Corrington*. Therefore, we read *Soules's* passing reference to a de novo standard as referring only to certain aspects of the district court's decision, and not to the application of the laches factors.

We are still left with the question of the proper standard of review of the court's laches determination. As *Jackson* noted, we have reviewed application of laches for an abuse of discretion on summary judgment. 25 F.3d at 888 (citing *Corrington*, 375 F.2d at 298); *see also Bailey*, 412 F.2d at 320. However, we have also reviewed laches for clear error in seemingly comparable circumstances. *Tagaropulos Inc.*, 502 F.2d at 1171; *Carter–Wallace, Inc.*, 434 F.2d at 803; *Crittenden*, 327 F.2d at 543. For example, in *Crittenden*, 327 F.2d at 543, we reviewed for clear error the district court's adoption of the magistrate's recommendation that the suit be dismissed for laches. It is not apparent why, as to a laches issue, we would review for an abuse of discretion on summary judgment, but for clear error when the court adopts the magistrate's recommendation.

Ultimately, any intracircuit conflict need not be resolved in this case. The result here will not depend upon whether the abuse of discretion or the clear error standard applies. *See Danjaq, LLC v. Sony Corp.*, 263 F.3d 942, 952 (9th Cir.2001) (avoiding question of proper standard for laches by concluding that the result would be the same under either standard); *Apache Survival Coalition v. United States*, 118 F.3d 663, 665 (9th Cir.1997) (same). There is a substantial, if not identical, overlap between the two standards when reviewing for laches. *See Piper Aircraft Corp. v. Wag–Aero, Inc.*, 741 F.2d 925, 936, 941 (7th Cir.1984) (Posner, J., concurring). As such, we will review the district court's laches determination for both an abuse of discretion and for clear error, leaving for another day the question of which constitutes the proper standard of review.

III

■ Jarrow contends that Nutrition Now's claims constitute false and deceptive

advertising in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).[3] Section 43(a)(1)(B) authorizes suit against persons who make false and deceptive statements in a commercial advertisement about their own or the plaintiff's product. *See Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir.1997); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.,* 911 F.2d 242, 244 (9th Cir.1990).[4] Nutrition Now first made the challenged claims about PB8 in 1985. Jarrow confronted Nutrition Now in 1993, but waited until 2000 to file suit. Nutrition Now asserts that Jarrow's delay results in laches as a bar to suit.

## A

 "Laches is an equitable time limitation on a party's right to bring suit," *Boone v. Mech. Specialties Co.,* 609 F.2d 956, 958 (9th Cir.1979), resting on the maxim that "one who seeks the help of a court of equity must not sleep on his rights." *Piper Aircraft, Corp.,* 741 F.2d at 939 (Posner, J., concurring). It is well established that laches is a valid defense to Lanham Act claims, including those for false advertising. *E.g., Hot Wax, Inc.,* 191 F.3d at 820–21; *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 191 (2d Cir.1996); *see also GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1209 (9th Cir.2000) (considering laches defense to a trademark infringement suit under § 43(a)(1)(A)). A party asserting laches must show that it suffered prejudice as a result of the plaintiff's unreasonable delay in filing suit. *Danjaq,* 263 F.3d at 951; *Couveau v. Am. Airlines, Inc.,* 218 F.3d 1078, 1083 (9th Cir.2000).

Laches, an equitable defense, is distinct from the statute of limitations, a creature of law. *E.g., Jackson,* 25 F.3d at 888. Statutes of limitation generally are limited to actions at law and therefore inapplicable to equitable causes of action. *E.g., Patton v. Bearden,* 8 F.3d 343, 347 (6th Cir.1993). Laches serves as the counterpart to the statute of limitations, barring untimely equitable causes of action. *E.g., Jackson,* 25 F.3d at 888.

While laches and the statute of limitations are distinct defenses, a laches determination is made with reference to the limitations period for the analogous action at law. If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable. *E.g., Shouse v. Pierce County,* 559 F.2d

**3.** The statute provides, in relevant part:
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any … false or misleading representation of fact, which—
…
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
§ 1125(a).

**4.** A prima facie case requires a showing that (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (4) the deception is material, in that it is likely to influence the purchasing decision; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product. *Southland Sod Farms,* 108 F.3d at 1139; *Cook, Perkiss & Liehe, Inc.,* 911 F.2d at 244.

1142, 1147 (9th Cir.1977) ("It is extremely rare for laches to be effectively invoked when a plaintiff has filed his action before limitations in an analogous action at law has run."). However, if suit is filed outside of the analogous limitations period, courts often have presumed that laches is applicable. *Brown v. Kayler,* 273 F.2d 588, 592 (9th Cir.1959); *Wilson v. Northwest Marine Iron Works,* 212 F.2d 510, 511 (9th Cir.1954).

1

■■■ The proper interplay between laches and the statute of limitations for Lanham Act claims is somewhat elusive. *See, e.g., Restatement (Third) of Unfair Competition* § 31 cmt. a (discussing the uncertain role of the statute of limitations for Lanham Act claims). The Lanham Act contains no explicit statute of limitations. *E.g., Official Airline Guides, Inc. v. Churchfield Publ'ns, Inc.,* 6 F.3d 1385, 1395 (9th Cir.1993). When a federal statute lacks a specific statute of limitations, we generally presume that Congress intended to "borrow" the limitations period from the most closely analogous action under state law. *Reed v. United Transp. Union,* 488 U.S. 319, 324, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989); *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *see also Barajas v. Bermudez,* 43 F.3d 1251, 1256 (9th Cir.1994). This presumption may be trumped; we will not borrow a state limitations period if "a rule from elsewhere in federal law clearly provides a closer analogy than available state law statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Reed,* 488 U.S. at 324, 109 S.Ct. 621; *see also Barajas,* 43 F.3d at 1256.

In passing, we have stated that § 43(a) borrows a state limitations period as a statute of limitations defense. *See Karl Storz Endoscopy v. Surgical Techs., Inc.,* 285 F.3d 848, 857 (9th Cir.2002); *General Bedding Corp. v. Echevarria,* 947 F.2d 1395, 1397 & n. 2 (9th Cir.1991). Curiously, these cases failed to consider whether "a rule from elsewhere in federal law" provides a better "analogy." *Reed,* 488 U.S. at 324, 109 S.Ct. 621. Specifically, these cases failed to consider whether Congress intended that laches, as opposed to the statute of limitations, be the sole timeliness defense available to § 43(a) claims. Section 43(a) monetary relief is "subject to the principles of equity," 15 U.S.C. § 1117(a), and injunctive relief is similarly available "according to the principles of equity." *Id.* § 1116(a). Given the equitable character of § 43(a) actions, Congress might have intended that laches be the sole timeliness bar to suit.[5] *Cf. Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 365 (6th Cir.1985) ("In determining when a plaintiff's suit should be barred under the Act, courts have consistently used principles of laches as developed by courts of equity."); *Ediciones Quiroga S.L. v. Fall River Music Inc.,* 35

---

5. The equitable nature of § 43(a) is further confirmed by the fact that laches is a bar to monetary relief under the act. *E.g., Hot Wax, Inc.,* 191 F.3d at 822; *Skippy, Inc. v. CPC Int'l., Inc.,* 674 F.2d 209, 212 (4th Cir.1982); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 523 F.2d 1331, 1344 (2d Cir.1975). *But see Grant Airmass Corp. v. Gaymar Indus., Inc.,* 645 F.Supp. 1507, 1515 (S.D.N.Y.1986) (holding that laches "does not serve to bar claims for damages" under the Lanham Act).

On the other hand, § 43(a) cannot be characterized as purely equitable; for example, certain trademark infringement actions trigger a Seventh Amendment right to a jury trial, which pertains to actions at law. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477–78, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

U.S.P.Q.2d 1814, 1819 (S.D.N.Y.1995) ("[G]iven the equitable nature of Lanham Act remedies and the ... application of the laches doctrine, laches is the more appropriate defense [than the statute of limitations]."), *modified on other grounds by,* No. 93 Civ. 3914, 1995 WL 366287 (S.D.N.Y. June 20, 1995); David C. Stimson, *Statutes of Limitations in Trademark Actions,* 71 Trademark Rep. 605, 611–14 (1981) (explaining that a statute of limitations defense might be unavailable due to the equitable nature of § 43(a) claims).

### 2

■ While it is uncertain whether Congress intended the statute of limitations to be a separate defense, the analogous state limitations period nonetheless plays a significant role in determining the applicability of laches. We have stated in contexts outside of the Lanham Act that the presumptive applicability of laches turns on whether the limitations period for the analogous action at law has expired. *E.g., Shouse,* 559 F.2d at 1147; *Brown,* 273 F.2d at 592; *Wilson,* 212 F.2d at 511. Therefore, consistent with the views of our sister circuits, we hold that if a § 43(a) claim is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit. *See Lyons Partnership, L.P. v. Morris Costumes, Inc.,* 243 F.3d 789, 799 (4th Cir.2001); *Kason Indus., Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199, 1203 (11th Cir.1997); *Hot Wax, Inc.,* 191 F.3d at 821; *Conopco, Inc.,* 95 F.3d at 191; *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 365–66 (6th Cir. 1985); *Univ. of Pittsburgh v. Champion Prods. Inc.,* 686 F.2d 1040, 1045 (3d Cir. 1982).

### 3

■ We must next determine *when* the analogous statute of limitations has expired for the purpose of fixing the presumption for laches. For many Lanham Act claims, the alleged violations are ongoing, *i.e.,* the wrongful acts occurred both within and without the limitations period. *E.g., Danjaq,* 263 F.3d at 953–54. As such, the statute of limitations is conceivably only a bar to monetary relief for the period outside the statute of limitations; the plaintiff is free to pursue monetary and equitable relief for the time within the limitations period. *E.g., id.; Hot Wax, Inc.,* 191 F.3d at 821–22; 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31.33 (4th ed. 2001) ("Usually, infringement is a continuing wrong, and the statute of limitations is no bar except as to damages beyond the statutory period.").

■ We hold that the presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period. To hold otherwise would "effectively swallow the rule of laches, and render it a spineless defense." *Danjaq,* 263 F.3d at 953; *see also Bridgestone/Firestone Research, Inc. v. Auto. Club De L'Ouest De La France,* 245 F.3d 1359, 1364 (Fed.Cir.2001) ("[T]he theory of 'continuing wrong' does not shelter [a defendant] from the defense of laches."); *Hot Wax, Inc.,* 191 F.3d at 821–22 ("Without the availability of the application of laches to a claim arising from a continuing wrong, a party could, theoretically, delay filing suit indefinitely. It would certainly be inequitable to reward this type of dilatory conduct...."). The plaintiff should not be entitled to the strong presumption against laches simply because some of the defendant's wrongful conduct occurred within the limitations period. Laches penalizes dilatory conduct; as such, the presumption

is that a § 43(a) plaintiff is barred if he fails to file suit promptly when the defendant commences the wrongful conduct.

■■■ We further hold, consistent with our precedent, that in determining the presumption for laches, the limitations period runs from the time the plaintiff knew or should have known about his § 43(a) cause of action. *General Bedding Corp.*, 947 F.2d at 1397 n. 2. This principle is grounded in the fact that laches penalizes inexcusable dilatory behavior; if the plaintiff legitimately was unaware of the defendant's conduct, laches is no bar to suit. *See Halstead v. Grinnan*, 152 U.S. 412, 417, 14 S.Ct. 641, 38 L.Ed. 495 (1894) ("There must, of course, have been knowledge on the part of the plaintiff of the existence of the rights, for there can be no laches in failing to assert rights of which a party is wholly ignorant, and whose existence he had no reason to apprehend."); *City of Davis v. Coleman*, 521 F.2d 661, 677 (9th Cir.1975) ("An indispensable element of lack of diligence is knowledge, or reason to know, of the legal right, assertion of which is 'delayed.' ").

### 4

In sum, we presume that laches is not a bar to suit if the plaintiff files within the limitations period for the analogous state action; the presumption is reversed if the plaintiff files suit after the analogous limitations period has expired. For purposes of laches, the limitations period may expire even though part of the defendant's conduct occurred within the limitations period. Further, the state limitations period runs from the time the plaintiff knew or should have known about his § 43(a) cause of action.

### 5

■■■ Jarrow and Nutrition Now agree that the analogous limitations period is

California's period for fraud, which is three years. *See* Cal.Civ.Proc.Code § 338(d); *Gen. Bedding Corp.*, 947 F.2d at 1397 n. 2; *see also Conopco, Inc.*, 95 F.3d at 191–92 (borrowing New York's fraud period for Lanham Act false advertising claim). It is undisputed that Jarrow knew of its cause of action in 1993, which is well beyond the three-year limitations period. Therefore, we presume that laches is applicable.

### B

As the party asserting laches, Nutrition Now must show that (1) Jarrow's delay in filing suit was unreasonable, and (2) Nutrition Now would suffer prejudice caused by the delay if the suit were to continue. *See, e.g., Danjaq*, 263 F.3d at 951.

### 1

■■■ A determination of whether a party exercised unreasonable delay in filing suit consists of two steps. *E.g., Danjaq*, 263 F.3d at 952–55. First, we assess the length of delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action. *E.g., Kling*, 225 F.3d at 1036; *Portland Audubon Soc'y v. Lujan*, 884 F.2d 1233, 1241 (9th Cir.1989). Second, we decide whether the plaintiff's delay was reasonable. *E.g., Danjaq*, 263 F.3d at 954–55; *Couveau*, 218 F.3d at 1083. The reasonableness of the plaintiff's delay is considered in light of the time allotted by the analogous limitations period. *E.g., Sandvik v. Alaska Packers Ass'n*, 609 F.2d 969, 971 (9th Cir.1979). We also consider whether the plaintiff has proffered a legitimate excuse for its delay. *E.g., Danjaq*, 263 F.3d at 954–55 (outlining several legitimate excuses for delay in filing suit).

The district court did not err in concluding that Jarrow exercised unreasonable delay in filing suit. Jarrow knew of its

potential cause of action in 1993, but waited until 2000 to file suit.[6] Jarrow's seven-year delay is more than double the time available to file suit under the analogous limitations period. *See* Cal.Civ.Proc.Code § 338(d).

Further, Jarrow does not offer a legitimate excuse for its lengthy delay. Jarrow attributes its delay to a problem with its supplier, Rosell. Jarrow avers that it did not wish to file suit without laboratory analysis from Rosell proving Nutrition Now's claims false. Rosell, however, had a policy of not providing laboratory analysis to be used in litigation. Jarrow promptly filed suit after Rosell changed its policy.

As the district court correctly noted, Rosell's litigation policy did not excuse Jarrow's delay in filing suit. Jarrow could have sought laboratory testing from another source. While Jarrow stresses that Rosell possessed unique expertise regarding probiotic nutritional supplements, it made no attempt to solicit an alternative tester. Jarrow undoubtedly perceived that its success in litigation would be bolstered by the submission of Rosell's test results. Nonetheless, Rosell's litigation policy did not justify Jarrow's delay in filing suit. Jarrow's delay in filing suit was unreasonable.

### 2

■ Laches will not apply unless Nutrition Now will suffer prejudice from Jarrow's delay if the suit were to proceed. *E.g.*, *Shouse*, 559 F.2d at 1147 ("Difficulties caused by the pendency of a lawsuit, and not by delay in bringing the suit do not constitute prejudice within the meaning of the laches doctrine."). The district court concluded that Nutrition Now would suffer prejudice because it used the challenged claims as a significant part of PB8's marketing to the public.

Nutrition Now has closely tied the challenged claims to PB8 since initial distribution in 1985. Nutrition Now has always prominently displayed the claims on PB8's product label. Nutrition Now has also used the claims as a central part of its extensive marketing campaign, which totals "hundreds of thousands" of dollars per year and includes the use of national magazine advertisements.

At bottom, Nutrition Now has invested enormous resources in tying PB8's identity to the challenged claims. After waiting for several years, Jarrow now seeks to compel Nutrition Now to abandon its presentation of PB8, forcing it to adopt a materially different characterization of its product. If Jarrow had filed suit sooner, Nutrition Now could have invested its resources in shaping an alternative identity for PB8 in the minds of the public. *See, e.g.*, *Hot Wax, Inc.*, 191 F.3d at 813 ("The market position pursued by[the defendant] with respect to the products at issue was uncontested by [the plaintiff] for years and courts have held that investments to exploit such a position are sufficient prejudice to warrant the application of the doctrine of laches."); *Conopco, Inc.*, 95 F.3d at 192–93 (finding prejudice because defendant may have chosen an alternative marketing position if the plaintiff had filed suit earlier). In light of the presumption of

**6.** Jarrow arguably should have known about its potential cause of action in 1985, when Nutrition first made the challenged claims about PB8. Ultimately, the result does not depend upon whether 1985 or 1993 is the appropriate date. Accordingly, we need not decide whether Jarrow should have known about its cause of action in 1985.

Jarrow suggests that its delay should be measured from 1999, when the FDA enacted regulations pertaining to the labeling of nutritional supplements, 21 C.F.R. §§ 101.4, 101.36. This argument is entirely without merit.

prejudice and our deferential standard of review, we must conclude that Nutrition Now would be prejudiced if Jarrow's suit were to proceed.

## C

■ Jarrow argues that even if laches is otherwise applicable, it should not bar its claim for prospective injunctive relief. It has often been said that laches is generally not a bar to prospective injunctive relief. *See, e.g., Danjaq,* 263 F.3d at 959–60; *Lyons P'ship, L.P.,* 243 F.3d at 799. Often the defendant will not be prejudiced by a bar on future conduct. As we recently explained, "Laches stems from prejudice to the defendant occasioned by the plaintiff's past delay, but almost by definition, the plaintiff's past dilatoriness is unrelated to a defendant's ongoing behavior that threatens future harm." *Danjaq,* 263 F.3d at 959–60.

In this case, Nutrition Now would be prejudiced by a prospective injunction. As discussed above, Nutrition Now has made the challenged claims a central part of PB8's identity in the minds of the public. *See, e.g., Conopco, Inc.,* 95 F.3d at 190, 192–93 (applying laches to a request for prospective injunctive relief because the challenged claims were a central part of the product's presentation to the public); *Hot Wax, Inc.,* 191 F.3d at 824 & n. 3 (same). Nutrition Now would be prejudiced if forced to abandon its long-term investment in its presentation of PB8 to the public. Therefore, laches bars Jarrow's claim for prospective injunctive relief.

## D

■ Jarrow argues that regardless of whether Nutrition Now can show unreasonable delay and prejudice, the public's interest defeats application of laches. Because laches is an equitable remedy, laches will not apply if the public has a strong interest in having the suit proceed. *See, e.g., Maryland–National Capital Park & Planning Comm'n v. United States Postal Serv.,* 487 F.2d 1029, 1042 (D.C.Cir.1973) ("Equitable remedies depend not only on a determination of legal rights and wrongs, but on such matters as laches, good (or bad) faith, and most important an appraisal of the public interest."); *cf. Portland Audubon Soc'y,* 884 F.2d at 1241 ("We have repeatedly cautioned against application of the equitable doctrine of laches to public interest environmental litigation."). The public's interest is of overriding importance, and as such, should be considered apart from any presumption of laches. *Cf. Conopco, Inc.,* 95 F.3d at 187 ("[T]he public good is of *paraount* importance when considering the equitable defense of laches." (emphasis added)).

Jarrow contends that Nutrition Now is duping the public into buying a worthless product. Because consumers are allegedly taking PB8 under the false impression that it will improve their health, Jarrow argues that the public has a strong interest in allowing the suit to proceed.

Jarrow correctly notes that the public has *some* interest in its suit. However, we must be careful not to define the public's interest in such a manner as to "effectively swallow the rule of laches, and render it a spineless defense." *Danjaq,* 263 F.3d at 953. For example, the public surely has *some* interest in ensuring that all product advertisements are materially accurate. However, if a plaintiff could defeat laches simply by asserting the public's interest in accurate advertising, laches would in effect not be a defense to Lanham Act false advertising claims. *Cf. Hot Wax, Inc.,* 191 F.3d at 826 (guarding against the adoption of any rule that would effectively eliminate laches as a defense to Lanham Act false advertising claims).

Of course, the public has a particularly strong interest in an accurate description of health and medical products. *See, e.g., Conopco,* 95 F.3d at 194 ("We have consistently held that the public's interest is especially significant when health and safety concerns are implicated, as with the advertising of over the counter medications."). Nevertheless, in order to ensure that laches remains a viable defense to Lanham Act claims, the public's interest will trump laches only when the suit concerns allegations that the product is harmful or otherwise a threat to public safety and well being. *Cf. id.*

Jarrow vigorously asserts that PB8 lacks the potency and effectiveness of competing probiotic supplements. However, the critical question is whether consumer health will be materially affected as a *consequence* of taking PB8. Mindful of our deferential standard of review, we cannot conclude that Jarrow has made such a showing. Consumer health may be *benefitted* by taking probiotic nutritional supplements. But, we cannot conclude that the failure to take an effective probiotic supplement puts consumer health in jeopardy. For example, Jarrow has not shown that probiotic supplements are akin to drugs such as heart medicine, which if ineffective, would lead to severe consequences.

Further, Nutrition Now does not promote PB8 in a manner that implicates public health concerns. Nutrition Now is not misleading consumers into departing from established medical care. For example, Nutrition Now does not urge consumers to take PB8 in lieu of prescribed medication. Nutrition Now markets PB8 as a *supplement* to, not a panacea for, better health.

Apart from alleging that PB8 is generally ineffective, Jarrow also claims that PB8 contains a dangerous strain of bacteria, S. faecium. However, Jarrow's allegations regarding the effect of this strain are conclusory, and at best, merely suggest that the strain is controversial. On this record, we cannot conclude that the district court erred.

### E

Alternatively, Jarrow argues that Nutrition Now is precluded from asserting laches because of unclean hands. A party with unclean hands may not assert laches. *E.g., Hot Wax, Inc.,* 191 F.3d at 825; *see also GoTo.com, Inc.,* 202 F.3d at 1209 (applying unclean hands doctrine to Lanham Act trademark infringement action). The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). The party must have "acted fairly and without fraud or deceit as to the controversy in issue." *Adler v. Fed. Republic of Nigeria,* 219 F.3d 869, 877 (9th Cir.2000) (internal quotation marks omitted). However, unclean hands does not constitute "misconduct in the abstract, unrelated to the claim to which it is asserted as a defense." *Republic Molding Corp. v. B.W. Photo Utils.,* 319 F.2d 347, 349 (9th Cir.1963).

Jarrow argues that Nutrition Now acted with unclean hands because it made the challenged claims knowing they were false. In a Lanham Act false advertising suit, a plaintiff cannot ordinarily show unclean hands, and thereby defeat laches, simply by alleging that the defendant made claims knowing that they were false. *See, e.g., Hot Wax, Inc.,* 191 F.3d at 826. "To conclude otherwise would be effectively to preclude the application of laches whenever a dispute of fact regarding the merits of a Lanham Act claim existed because ...

conceivably all suits involving Lanham Act claims could involve accusations of fraudulent or deceptive conduct." *Id.* A plaintiff can escape laches under the unclean hands doctrine only if the court is left with a firm conviction that the defendant acted with a fraudulent intent in making the challenged claims. *See id.* Jarrow has not come close to making such a showing in this case.

Jarrow also claims that Nutrition Now is barred by unclean hands because of its conduct in defending Jarrow's accusations in 1993. When Jarrow initially leveled its accusations about PB8, Nutrition Now retained Alpha Omega ("Alpha"), a microbiology laboratory. Alpha tested samples of PB8 and transmitted its findings to Nutrition Now. Unbeknownst to Alpha, Nutrition Now prepared a report based on the findings. Nutrition Now also created a graphic letterhead for Alpha for use on the report, without Alpha's knowledge or permission. Nutrition Now transmitted the report to a "small number of health stores," along with a cover letter disparaging Jarrow's accusations.

Alpha promptly complained to Nutrition Now. Alpha charged that the report contained information that it did not verify and would not stand by. Alpha also resented the fact that Nutrition Now put Alpha's letterhead on a report that it did not prepare. Nutrition Now promptly ceased using the report after receiving Alpha's complaint.

Nutrition Now's actions, while troubling, do not amount to unclean hands. The report was distributed to only a "small number" of stores. Nutrition Now promptly ceased using the report after Alpha complained. It is also significant that Jarrow was not misled by the report. Perhaps, Nutrition Now's hands are not as "clean as snow." *GoTo.com, Inc.*, 202 F.3d at 1210. However, we cannot conclude that its actions rise to the level of unclean hands.

## IV

 Jarrow also appeals the district court's denial of its Rule 56(f) motion for a continuance of the summary judgment motion pending additional discovery. A Rule 56(f) motion must set forth why additional discovery is warranted and the particular facts expected to be discovered. *E.g., Mackey v. Pioneer Nat'l Bank,* 867 F.2d 520, 523 (9th Cir.1989). While Jarrow presented a laundry list of additional information it wished to discover, none of this information was necessary to defend against laches. The district court did not abuse its discretion in denying Jarrow's motion. *See Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1005 (9th Cir.2002).

## V

 Finally, Jarrow appeals the district court's application of laches to its state law claims for unfair competition, Cal. Bus. & Prof.Code § 17200, and false advertising, *id.* § 17500. We need not decide whether the California and federal laches standards are identical. The standards are substantially similar, and any differences would not affect the result in this case. *See, e.g., Finnie v. Town of Tiburon,* 199 Cal.App.3d 1, 244 Cal.Rptr. 581, 588 (1988) ("It is well settled that laches is established by showing unreasonable delay in bringing the action and prejudice to defendant resulting from this delay. It is likewise recognized that the defense of laches can be asserted in injunction cases." (internal citations omitted)); *Vernon Fire Fighters Ass'n v. City of Vernon,* 178 Cal.App.3d 710, 223 Cal.Rptr. 871, 877 (1986) ("The prejudice must be caused by the delay and may be of either a factual nature or some prejudice in the presentation of a defense."); *People v.*

*Dep't of Housing & Cmty. Dev.*, 45 Cal. App.3d 185, 119 Cal.Rptr. 266, 273 (1975) (recognizing that public interest can trump application of laches). The district court did not err in applying laches to Jarrow's state claims.

**AFFIRMED.**