# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SELLER AGENCY COUNCIL, INC.,
 *Plaintiff-counter-defendant-*
*Appellee,*

v.

KENNEDY CENTER FOR REAL ESTATE
EDUCATION, INC., a Georgia
corporation; JOE KENNEDY, an
individual,
 *Defendants-counter-claimants-*
*Appellants.*

No. 08-56791

D.C. No.
8:06-cv-00679-
AHS-MLG

OPINION

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, District Judge, Presiding

Argued and Submitted
February 9, 2010—Pasadena, California

Filed September 3, 2010

Before: Sidney R. Thomas and Barry G. Silverman,
Circuit Judges, and Jeremy Fogel, District Judge*

Opinion by Judge Fogel

---

*The Honorable Jeremy Fogel, United States District Judge for the
Northern District of California, sitting by designation.

13415

## COUNSEL

Arthur A. Gardner and Joseph W. Staley, Gardner, Groff, Greenwald & Villanueva, P.C., Atlanta, Georgia, for the defendants-appellants.

Grant J. Hallstrom and Timothy D. Otte, Hallstrom Klein & Ward, LLP, Irvine, California, for the plaintiff-appellee.

## OPINION

FOGEL, District Judge:

Appellants Joe Kennedy ("Kennedy") and the Kennedy Center for Real Estate Education, Inc. ("KCREE") appeal the district court's order denying them damages, attorneys' fees, and costs in an action for trademark infringement against Appellees Seller Agency Council, Inc. ("SAC"), RealtyU, Inc. ("RealtyU"), and Stefan Swanepoel ("Swanepoel"). The district court found that Appellants are the owners of the trademarks in question, but it also determined that Appellants consented and acquiesced to the use of the marks by Appellees. Appellants argue that the district court erred in finding consent and acquiescence. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

Kennedy, the owner of KCREE, created an educational curriculum called the Accredited Seller Representative ("ASR") program. In connection with the ASR program, Appellants developed and registered several trademarks ("the ASR marks").[1] In 2003, Appellants began to market and earn

---

[1] The marks at issue have the following federal registration numbers: 3,071,769; 3,088,326; 3,093,851; 3,139,782; 3,325,443; and 3,240,837.

income from the ASR program. A third-party real estate school would pay KCREE an annual fee (referred to as the license fee) in order to use the ASR materials to teach an ASR class. In addition to the license fee, KCREE charged the third-party schools a fee for each student in an ASR class, and successful students also would pay yearly fees to KCREE to maintain their ASR registration.

In 2005, Swanepoel, the owner and president of RealtyU, approached Kennedy with a business proposition. RealtyU represented that it could provide KCREE with access to the RealtyU affiliates across the country and thus to a larger number of students. Kennedy and Swanepoel signed a "Letter of Intent" on June 28, 2005, agreeing to form a new company, SAC. KCREE was to transfer the ASR marks to SAC in return for 49% ownership of the company. RealtyU would contribute working capital to SAC and own the remaining 51%. Other than teaching fees earned by Kennedy, all student course fees, provider licensing fees, and renewal fees related to the ASR marks would belong to SAC, and profits would be distributed according to the parties' respective ownership shares. Neither KCREE nor SAC was required to pay the annual licensing fee. Kennedy testified that SAC had discretion to waive the licensing fee for RealtyU affiliated schools.

On or about September 8, 2005, the parties executed a series of formal agreements, including a stock purchase agreement. Among other things, the agreements required SAC to take the "best overall actions" for the company. SAC was to acquire the ASR marks upon closing; however, SAC had to meet certain conditions precedent before the closing could occur, including the transfer of SAC shares to Appellants. Although the share transfer never occurred, SAC and RealtyU utilized the ASR marks between September 8, 2005 and July 12, 2006 without objection by Appellants.

After executing the agreements, Appellants learned that a significant stream of ASR program revenue was being

diverted from SAC directly to RealtyU. On July 12, 2006, Appellants sent a cease-and-desist letter to Swanepoel stating that "your companies do not have a contract with [Appellants], [and] your continued use of [their] trademarks constitutes trademark infringement." SAC filed a complaint for declaratory relief on July 25, 2006, requesting a determination that SAC was the rightful owner of the ASR marks. On February 2, 2007, Appellants filed counterclaims for trademark infringement against SAC, RealtyU, and Swanepoel.

On July 28, 2006, three days after commencement of the action for declaratory relief, Kennedy sent an email to Tom Mitchell ("Mitchell"), the Senior Vice President of RealtyU Group, Inc.[2] Kennedy forwarded a complaint of a potential ASR student who was having difficulty registering for an online ASR course. Kennedy told the potential student that he was "forwarding this to our IT folks." Mitchell responded to Kennedy that it was "[t]aken care of." More than a year later, on November 19, 2007, Kennedy sent Mitchell a facsimile regarding "Candidate Apps." The cover page read "[f]rom Kennedy Center to be placed in database." The facsimile contained several ASR candidate applications and the candidates' completed ASR course exams. The district court found that Kennedy had "ask[ed] SAC to make use of the intellectual property by requesting that it process certificates and certify members in the ASR program for classes."

## B.   The District Court's Determinations

The district court determined that Appellants are the rightful owners of theASR marks. It concluded that SAC could not enforce the agreement requiring Appellants to transfer the intellectual property because SAC had not satisfied the conditions precedent contained in the stock purchase agreement, including its obligation to issue stock to Appellants. The dis-

---

[2]Based on Appellees' corporate disclosure statement, RealtyU Group, Inc. owns RealtyU, Inc.

trict court also found that SAC could not enforce the agreement because it had unclean hands: while the stock purchase agreement required SAC to take the "best overall actions" for the company, SAC in fact diverted many of the ASR student course fees to RealtyU rather than keeping the fees itself.

The district court noted that "[f]rom September 8, 2005, until July 12, 2006, [i]t is undisputed that . . . SAC had permission or an implied license to use the ASR Trademarks." It also concluded that Appellants' conduct after the July 12, 2006 cease-and-desist letter led SAC, RealtyU, and Swanepoel to believe they had permission to continue using the ASR marks, and it denied damages and royalties for that period "in light of [Appellants'] acquiescence to [Appellees'] use of the trademarks" after the cease-and-desist letter and the initiation of litigation. For the same reason, the district court declined to award attorneys' fees. The district court did, however, permanently enjoin SAC, RealtyU, and Swanepoel from infringing or otherwise making use of Appellants' intellectual property.

## II.   ANALYSIS

Appellants challenge the district court's decision on several grounds. They argue that because SAC had unclean hands, the court erred in sustaining SAC's affirmative defense of acquiescence. They also contend that the record is insufficient to support the conclusion that they gave any form of consent for RealtyU to use the ASR marks, either before or after the July 12, 2006 cease-and-desist letter. Finally, they also challenge the finding of acquiescence itself, arguing that the evidence in the record is insufficient to support the conclusion that they acquiesced to use of the ASR marks by SAC or RealtyU.

### A.   Standards of Review

To the extent that Appellants challenge the district court's factual findings, such findings are reviewed for clear error.

Fed. R. Civ. P. 52(a)(6). A district court's finding of fact is clearly erroneous if it is "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 577 (1985)).

The application of the equitable doctrine of unclean hands is within the discretion of the trial court and is reviewed for abuse of that discretion. *See TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 694 (9th Cir. 1990) (citing *Wash. Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 478 (9th Cir. 1969) (finding that the application of the unclean hands doctrine was committed to the district court's discretion). Similarly, while the question appears to be one of first impression in our circuit, we join our sister circuits in concluding that the application of the equitable doctrine of acquiescence is within the discretion of the trial court and also is reviewed for abuse of discretion. *See Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1558 (11th Cir. 1991) (finding that "[b]ecause acquiescence is an equitable defense, it will be reviewed for an abuse of discretion); *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 932-33 (7th Cir. 1984) (finding that because acquiescence imports a fact-based analysis, its determination rests in the "sound discretion" of the trial court and only will be disturbed on review for "clear abuse" of that discretion).

Finally, " '[w]e may affirm on any basis supported by the record, whether or not relied upon by the district court.' " *Bank of N.Y. v. Fremont Gen. Corp.*, 514 F.3d 1008, 1020 n.8 (9th Cir. 2008) (quoting *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686 (9th Cir. 2007)) (alteration in the original).

## B.  SAC's Equitable Defenses and the District Court's Finding of Unclean Hands

[1] Appellants argue that SAC's unclean hands should preclude it as a matter of law from benefitting from the equitable

defense of acquiescence. "The doctrine [of unclean hands] bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989) (citations omitted). The doctrine of unclean hands also can bar a defendant from asserting an equitable defense. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841-42 (9th Cir. 2002) (noting that a defendant with unclean hands is barred from asserting the equitable defense of laches). " 'It is fundamental to [the] operation of the doctrine that the alleged misconduct by the [party] relate directly to the transaction concerning which the complaint is made.' " *Dollar Sys.*, 890 F.2d at 173 (quoting *Arthur v. Davis*, 126 Cal. App. 3d 684, 693-94 (Cal. Ct. App. 1981)). "[U]nclean hands does not constitute 'misconduct in the abstract, unrelated to the claim to which it is asserted as a defense.' " *Jarrow*, 304 F.3d at 841 (citing *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963)).

The district court found that SAC had unclean hands because it diverted substantially all of its ASR program revenue to RealtyU, despite the provisions of the stock purchase agreement, which specified that ASR program revenue was for the benefit of SAC and that SAC was obligated to take the "best overall actions" for the benefit of the company. It was this diversion of revenue that ultimately precipitated the July 12, 2006 cease-and-desist letter and Appellants' claim for trademark infringement.

**[2]** However, the district court's finding of unclean hands related explicitly to events that occurred *before* July 12, 2006. SAC's claim of acquiescence was based on events occurring *after* July 12, 2006, specifically Kennedy's requests that SAC continue to use the ASR marks even after Appellants sent their cease-and-desist letter. The record does not reflect a determination by the district court with respect to whether

SAC acted with unclean hands after July 12, 2006. However, we must presume that in sustaining SAC's acquiescence defense, the district court found implicitly that SAC did not have unclean hands with respect to Appellants' claim for trademark infringement, which could have arisen only after July 12, 2006. The district court did not abuse its discretion in concluding that SAC's earlier breach of the stock purchase agreement did not preclude SAC from claiming that Appellants acquiesced to its use of the ASR marks thereafter.

## C.  RealtyU's Right to Use the ASR Marks before July 12, 2006

Appellants contend that RealtyU never had any right to use the ASR marks, notwithstanding any acquiescence that may have occurred after July 12, 2006. The district court's finding of consent is a factual determination that we review for clear error. *See Fremont Gen. Corp.*, 523 F.3d at 1020 (noting that a district court's factual findings established consent and could not be overturned without a showing that the finding was clearly erroneous); *Gonzalez-Caballero v. Mena*, 251 F.3d 789, 795 (9th Cir. 2001) (noting that a district court's factual finding of consent was not clearly erroneous); *PIC Realty Corp. v. Evans*, 605 F.2d 476, 483 (9th Cir. 1979) (agreeing with the district court that the bankruptcy court's finding of no consent was not clearly erroneous). A district court's finding of fact is clearly erroneous if it is "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.' " *Hinkson*, 585 F.3d at 1262.

**[3]** The district court found explicitly that SAC had permission or an implied license to use the ASR marks from September 8, 2005 until July 12, 2006. Although it did not make such an explicit finding with respect to RealtyU, because it declined to award damages based on RealtyU's use of the ASR marks, it must have decided implicitly that RealtyU also had consent of some type to use the ASR marks before July

12, 2006. In addition, " '[w]e may affirm on any basis supported by the record, whether or not relied upon by the district court.' " *Fremont Gen.*, 514 F.3d at 1020 n.8 (citation omitted). The district court determined that "Kennedy signed agreements with SAC in September 2005 and he and his company promptly began to cooperate with RealtyU and/or SAC to market his ASR program." It also found expressly that the purpose of Swanepoel's proposed business venture was to provide Appellants with "access to the RealtyU affiliates across the country and the large number of students they provide." Thus, the purpose of the agreement between KCREE and SAC was to allow RealtyU and its affiliates to use the ASR marks.

**[4]** This determination is neither illogical nor implausible: in order for RealtyU to provide SAC with ASR student fees, it had to use the ASR marks. However, Appellants contend that RealtyU had consent to use the marks only if it paid a licensing fee for that use — a fee that should have been paid to SAC. While the district court did not make an explicit factual determination as to this point, its implicit conclusion that RealtyU or its affiliates did not have to pay a licensing fee is supported by inferences that may be drawn from the record. Kennedy testified at trial as follows:

> Q:  [Counsel] If I understand what you're saying, you're testifying that you made an agreement and memorialized it in the stock purchase agreement that Kennedy Center itself would not have to pay the thousand dollar a year licensing fee, right?
>
> A:  [Kennedy] Likewise
>
> Q:  And neither would RealtyU?
>
> A:  That's correct. [ ]

(ER 31:7-13.) Kennedy continued to explain:

Q:  So if I understand things, neither Kennedy Center nor Seller Agency Council are [*sic*] required to pay the annual licensing fee?

A:  That is correct.

Q:  What about RealtyU affiliate schools?

A:  I believe that it's basically that it's up to RealtyU. I mean, they don't have to charge the licensing fee if they don't want to. The actual annual license fee.

Q:  So Seller Agency Counsel could waive the license fee for the RealtyU school?

A:  That is correct. That is correct.

(ER 32:6-16.)

**[5]** The district court's factual determination that Appellants consented to RealtyU's use of ASR marks prior to July 12, 2006 is not clearly erroneous. Accordingly, RealtyU may be liable only for infringement occurring after it received the cease-and-desist letter on July 12, 2006, and then only if Appellants did not consent or acquiesce to that use.

## D.  Acquiescence

**[6]** Although we have dealt in passing with the concept of acquiescence to infringement — *see, e.g., Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply*, 106 F.3d 894, 899 (9th Cir. 1997); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1294 (9th Cir. 1992); *Nat'l Lead Co. v. Wolfe*, 223 F.2d 195 (9th Cir. 1955); *Golden W. Brewing Co. v. Milonas & Sons, Inc.*, 104 F.2d 880 (9th Cir. 1939) — we

have not articulated a definition or established a practical test for district courts to apply. We begin by observing that the equitable defenses of acquiescence and laches are very similar. "Laches is an equitable time limitation on a party's right to bring suit resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow*, 304 F.3d at 835 (citations and internal quotations marks omitted). Acquiescence, on the other hand, limits a party's right to bring suit following an *affirmative* act by word or deed by the party that conveys implied consent to another. 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 31:42 (4th ed. 2008) (citing *What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tex.*, 357 F.3d 441, 452 (4th Cir. 2004) (finding that "[a]cquiescence is the active counterpart to laches, a doctrine based on passive consent"); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 547-48 (10th Cir. 2000) (finding that acquiescence requires "conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant"); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996) (finding that acquiescence implies active consent, while laches implies passive consent); *Coach House*, 934 F.2d at 1558 (finding that "[t]he difference between acquiescence and laches is that laches denotes passive consent and acquiescence denotes active consent")).

The district court applied the test articulated in *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002). Acquiescence under *ProFitness* requires that "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Id*. at 67 (internal citation omitted). That test appears to have originated in an Eleventh Circuit opinion modifying that court's test for laches to accommodate an acquiescence inquiry. *See Coach House*, 934

F.2d at 1558 (modifying the *prima facie* case for laches from *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1517 (11th Cir. 1984), to create the *prima facie* case for acquiescence as articulated in the opinion and recited in *ProFitness*).

**[7]** Because laches and acquiescence are closely related concepts, we agree with the approach taken by the Eleventh Circuit that modifying our current test for laches is an appropriate way to provide a practical test for acquiescence. In the Eleventh Circuit, the *prima facie* case for laches required "(1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that the delay caused the defendant undue prejudice." *Conagra*, 743 F.2d at 1517 (citations omitted). The *prima facie* case for laches in our own circuit is essentially identical. "The test for laches is two-fold: first, was the plaintiff's delay in bringing suit unreasonable? Second, was the defendant prejudiced by the delay?" *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters.*, 559 F.3d 985, 990 (9th Cir. 2009) (citing *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006); *Jarrow*, 304 F.3d at 838). The first aspect of our test in turn consists of two sub-parts: an assessment of the length of the delay followed by an assessment of the reasonableness of the delay. *Jarrow*, 304 F.3d at 838.

**[8]** Because we agree with the Eleventh Circuit that acquiescence differs from laches principally in that it requires some form of active consent, we conclude that the *Coach House* test largely comports with our own understanding of the prima facie case for acquiescence. Accordingly, we adopt that test. The elements of a *prima facie* case for acquiescence are as follows: (1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice.

With respect to the third prong, we note that in the case of laches, undue prejudice requires at least some reliance on the

absence of a lawsuit. *See Lathan v. Volpe*, 455 F.2d 1111, 1122 (9th Cir. 1971), *overruled on other grounds by Lathan v. Brinegar*, 506 F.2d 677, 691 (9th Cir. 1974) (finding "the two essential elements of laches — lack of diligence by plaintiff and injurious reliance thereon by defendant"); *accord Pro Football, Inc. v. Harjo*, 565 F.3d 880, 884 (D.C. Cir. 2009) ("To be sure, a finding of prejudice requires at least some reliance on the absence of a lawsuit"). Relatedly, prejudice in the context of acquiescence inherently must involve reliance on the senior user's affirmative act or deed, and such reliance must be reasonable. When inquiring into the reasonableness of reliance, a district court must examine both the content of the affirmative act and the context in which that act was performed. In addition to their relevance with respect to undue prejudice, findings with respect to reliance also may inform whether the delay between the active representation and assertion of the right or claim was excusable. *See* 3 ANNE GILSON LALANDE, GILSON ON TRADEMARKS § 11.08[3][i][iii][A] (2010) ("When the plaintiff has in some way assured the defendant that it will not assert its rights in the mark and the defendant has relied to its detriment, the plaintiff should be estopped from bringing an action by its acquiescence regardless of the period of delay.").

**[9]** While it appropriately drew upon *ProFitness* for the elements of acquiescence, the district court apparently did not make factual findings either as to the scope of Appellants' active representations or as to the extent and reasonableness of Appellees' reliance on those representations. In particular, it did not determine whether Appellants' requests that Appellees use the ASR marks for specific purposes after July 12, 2006 amounted to a *carte blanche* to use the marks for any other purposes, whether and to what extent the marks actually were used for other purposes, or whether it was reasonable in light of the cease-and-desist letter and subsequent litigation for Appellees to use the marks either for purposes of the specific requests or for purposes outside of scope of those requests. Because the application of the acquiescence doctrine

is within the discretion of the trial court, *see Coach House*, 934 F.2d at 1558; *Piper Aircraft*, 741 F.2d at 932-33, we will vacate the judgment and remand so that the district court may consider these questions consistent with the foregoing discussion.

**E.    Whether Appellants granted consent to use the ASR marks after July 12, 2006**

**[10]** Appellees contend that the judgment may be affirmed based upon the district court's separate conclusion that their use of the ASR marks was with Appellants' "consent and permission." The district court concluded that "[Appellees'] use of the intellectual property, including use past the commencement of this litigation, was with [Appellants'] consent and acquiescence." However, a fair reading of the district court's discussion as a whole reflects a determination that Appellants *consented* to the use of the ASR marks before July 12, 2006 and *acquiesced* to that use after July 12, 2006. The district court observed that "[Appellants'] conduct after they sent the July 12, 2006 demand letter led [Appellees'] to believe that they continued to have 'permission' to use the trademarks." The district court's phrasing — i.e., that Appellees only *believed* that they had "permission" — demonstrates that the district court was focused on acquiescence rather than actual consent.

**[11]** To be sure, Kennedy made active representations that Appellees could use the ASR marks, at least for the purposes of specific tasks. The district court found that Kennedy "request[ed] that [SAC] process certificates and certify members in the ASR program for classes," and that he "continued to forward student information to SAC to be included in SAC's 'website system' [between July 12, 2006 and November 2007]." Nonetheless, as the district court determined, Appellees did not have a contractual right to use the ASR marks. Any consent that may have been granted after July 12, 2006 arguably amounted to nothing more than a revocable license

to use the ASR marks for the particular tasks. Because the parties were litigating actively with respect to the ASR marks at the time Kennedy made his requests, it would be difficult, if not impossible, to determine if and when Appellants revoked any post-July 12, 2006 consent to Appellees' use of the marks. Because of these difficulties, the district court was correct to apply the acquiescence doctrine to the instant case. Rather than attempting to determine exactly when Appellants granted or revoked consent, the proper inquiry is whether and to what extent Appellees relied reasonably on Appellants' active representations that Appellees had a right to use the marks.

## III.    COSTS AND ATTORNEYS' FEES ON APPEAL

[12] Pursuant to Federal Rule of Appellate Procedure 38, Appellees seek double costs and attorneys' fees on appeal. "We can award such relief only 'if the result is obvious or if the claims of error are wholly without merit.' " *In re Peoro*, 793 F.2d 1048, 1052 (9th Cir. 1986) (quoting *Orange Belt Dist. Council of Painters No. 48 v. Kashak*, 774 F.2d 985, 991 (9th Cir. 1985)). Appellees contend that Appellants' arguments are without merit. Because we conclude that the case must be remanded to the district court,[3] we cannot conclude that Appellants' arguments are wholly without merit.[4]

## IV.    CONCLUSION

We affirm the district court's conclusion that the doctrine of unclean hands does not bar the application of the equitable

---

[3]Appellees also argue that Appellants' briefing raises matters not presented to the district court and contains misleading and inappropriate characterizations of the district court's determinations. Although there is some merit to these observations, we conclude that sanctions would be inappropriate.

[4]In light of this disposition, Appellants' motion to stay consideration of this issue and to strike Appellees' brief in opposition to the motion to stay are terminated as moot.

defense of acquiescence in this instance and its conclusion that RealtyU had permission to use the ASR marks before July 12, 2006. We vacate the judgment and remand so that the district court may consider the applicability of Appellees' defense of acquiescence in a manner consistent with this opinion. Each party shall bear its own costs.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.